STATE of South Dakota, Plaintiff
and Respondent,

v.

Arthur STIP, Defendant and Appellant.

No. 11815.

Supreme Court of South Dakota.

Argued Sept. 7, 1976.

Decided Nov. 12, 1976.

John P. Dewell, Asst. Atty. Gen., Pierre, Wilson Kleibacker, Lake County State's Atty., Madison, for plaintiff and respondent; William J. Janklow, Atty. Gen., Pierre, on the brief.

Steve Jorgensen of Willy, Pruitt, Matthews & Jorgensen, Sioux Falls, for defendant and appellant.

DUNN, Chief Justice.

The defendant was convicted in a jury trial by the Fourth Judicial Circuit Court of obstructing a public officer under SDCL 3–15–3 [1] in the discharge of her duty in that defendant prevented the Lake County Director of Equalization from making a property spot check pursuant to SDCL 10–3–23 [2] on his farm. Defendant appeals, alleging as error (1) that the director of equalization was introduced as the county assessor, and that county assessors have no power to make such spot checks, (2) that the director had an alternate method of assessment, and thus there was no obstruction in the performance of her duty, and (3) that a search warrant must be obtained prior to entry by a public official under SDCL 10–3–23. Defendant also challenges the constitutionality of this statute under § 11, Article VI of the South Dakota Constitution. We reverse.

On June 13, 1975, the director of equalization and her deputy accompanied the Lake County Sheriff to defendant's property at a time set during a previous conversation between the sheriff and defendant. The pur-

pose of the visit was to spot-check defendant's personal property and to measure defendant's buildings. Although properties to be spot-checked were normally determined by a random drawing, defendant's name had been submitted by the township board. When they arrived, defendant's pickup was found blocking the driveway to his farm. Upon being informed of the purpose of the visit, defendant refused their entry. Neither the director nor the sheriff had a search warrant. A complaint was later signed. Defendant was tried before a jury which returned a verdict of guilty. He was given a thirty-day jail sentence which was to be suspended upon his allowing the director to make an appraisal of his property.

Upon arriving at defendant's farm, the director was identified by the sheriff and by herself as the county assessor. Defendant claims that the offices of director of equalization and county assessor are not the same. Because SDCL 10–3–23 does not provide that assessors have the power to enter property, defendant maintains that he properly refused entry to the director when she was introduced as the county assessor. He particularly notes that SDCL 10–3 contains several sections which include assessor in enumerating powers of the director, his deputies and assessors. He claims the absence in SDCL 10–3–23 was purposeful and that assessors are precluded from such entry.

A review of SDCL 10–3 reveals that two distinct offices—assessor and director of equalization—do exist; however, there are also deputy assessors who serve as deputies to the director and have his powers and duties. SDCL 10–3–11. Evidence was presented that the title of director of equalization may have been mentioned once during the conversations between the director and the defendant or between the sheriff and the defendant. The record indicates

---

1. "Every person who willfully delays or obstructs any public officer in the discharge or attempt to discharge any duty of his office is guilty of a misdemeanor."

2. "The director of equalization and his deputies shall have power to enter upon and inspect all property for the purpose of determining the value thereof or to discover and list property that has been omitted from the assessment rolls; and shall each year list the taxpayers whom he has checked and file said list with the county auditor."

that defendant knew the director and knew the purpose of her visit. For that reason we hold it was not prejudicial in this suit for the court to instruct the jury that the director of equalization and county assessor were the same person.

Defendant next contends that by refusing the director entry upon his land he did not obstruct her in the performance of her duty because SDCL 10–3–27 provides an alternate method of assessment when a landowner refuses to comply with the requirements of SDCL 10–3. Defendant contends that SDCL 10–3–23 is only one method of assessing property. He claims that because SDCL 10–3–27 was listed as one of the "required duties" of the director under § 7(10), Ch. 477, S.L.1957, and because SDCL 10–3–23 was listed under "additional duties and powers" in § 8(6), Ch. 477, S.L. 1957, these methods must be viewed together and that they provide alternative methods of assessment. SDCL 10–3–27 provides as follows:

"The director of equalization, and his deputies, or assessors are hereby required to make an estimate of the value of property, where any person, after demand by the director, neglects or refuses to give under oath, the statement required by § 10–6–8, or to comply with the other requirements of this chapter or chapter 10–6, and to note the neglect or refusal on the assessment book opposite the name of such persons."

While the director is required by SDCL 10–3–27 to estimate by this "windshield appraisal" method when a person refuses to comply with the requirements of SDCL 10–3 or 10–6, there are no requirements under SDCL 10–3–23 to which defendant must comply as there are in SDCL 10–3–18, 10–3–19, 10–3–20, 10–6–5, 10–6–6, 10–6–7, 10–6–8, 10–6–12, 10–6–13, 10–6–15 and 10–6–35.7. SDCL 10–3–23 merely empowers the director and his deputies "to enter upon and inspect all property," ob-

struction of which has been classified by our legislature as a misdemeanor.[3]

Finally, defendant contends that the United States Supreme Court cases of *Camara v. Municipal Court*, 1967, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930, and *See v. Seattle*, 1967, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943, require that absent special or emergency circumstances a search warrant must be obtained prior to entry by public officials. Defendant challenges the constitutionality of SDCL 10–3–23 under § 11, Article VI of the South Dakota Constitution, which provides:

"The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause supported by affidavit, particularly describing the place to be searched and the person or thing to be seized."

In determining if warrantless entry under SDCL 10–3–23 is "unreasonable" under our state constitution, we look for guidance from several United States Supreme Court cases in which that Court construed Fourth Amendment reasonableness and warrantless administrative searches.

In *Camara v. Municipal Court*, supra, the United States Supreme Court ruled that a writ of prohibition should have been granted preventing appellant's prosecution for refusing to permit a warrantless inspection of his residence by a municipal health inspector. Although the proposed inspection was routine and "a less hostile intrusion than the typical policeman's search for the fruits and instrumentalities of crime," 387 U.S. at 530, 87 S.Ct. at 1731, 18 L.Ed.2d at 936, and although there were procedural safeguards limiting the inspections, the Supreme Court held that Fourth Amendment interests were threatened. The Court stated that:

"The basic purpose of this Amendment, as recognized in countless decisions of this Court, is to safeguard the privacy

---

**3.** SDCL 22–6–2 makes the offense "punishable by imprisonment in a county jail not exceeding one year or by a fine not exceeding five hun-

dred dollars, or by both such fine and imprisonment."

and security of individuals against arbitrary invasions by governmental officials." 387 U.S. at 528, 87 S.Ct. at 1730, 18 L.Ed.2d at 935; quoted in *State v. Opperman*, 1975, S.D., 228 N.W.2d 152, reversed, —— U.S. ——, 96 S.Ct. 3092, 49 L.Ed.2d 1000.

Several factors necessitating the warrant requirement were listed. Housing code violations discovered during such an inspection were enforceable by criminal process. In addition, refusal to permit an inspection was punishable by criminal process. The Court went further, stating:

> "Even in cities where discovery of a violation produces only an administrative compliance order, refusal to comply is a criminal offense, and the fact of compliance is verified by a second inspection, again without a warrant." 387 U.S. at 531, 87 S.Ct. at 1732, 18 L.Ed.2d at 936–937.

Another factor considered by the Court included the assistance a warrant would serve in informing the resident of the need for, authority for, and limits of the inspection; in limiting the discretion of the inspector; and in providing the individualized review that the Court has so long favored. See, e. g., *Johnson v. United States*, 1948, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436.

■ The Supreme Court rejected the claim that the public interest demanded warrantless administrative searches.

> "In assessing whether the public interest demands creation of a general exception to the Fourth Amendment's warrant requirement, the question is not whether the public interest justifies the type of search in question, but whether the authority to search should be evidenced by a warrant, which in turn depends in part upon whether the burden of obtaining a warrant is likely to frustrate the governmental purpose behind the search." 387

U.S. at 533, 87 S.Ct. at 1733, 18 L.Ed.2d at 938.

Thus, where an emergency exists, warrantless searches may be made, but as in most routine area inspections where "there is no compelling urgency to inspect at a particular time or on a particular day" warrants should be sought, but only after entry is refused. 387 U.S. at 539, 87 S.Ct. at 1736, 18 L.Ed.2d at 941. In the companion case of *See v. City of Seattle*, supra, the Court applied the *Camara* ruling to a businessman's refusal to allow entry by a fire inspector.

Later cases have found *See* and *Camara* inapplicable in the "closely regulated" liquor industry, *Colonnade Catering Corp. v. United States*, 1970, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60; in "pervasively regulated business" under the Gun Control Act of 1968 where an inspection system was approved "carefully limited in time, place, and scope," *United States v. Biswell*, 1972, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87; and home visits under New York's aid to families with dependent children where no criminal sanction was provided. *Wyman v. James*, 1971, 400 U.S. 309, 91 S.Ct. 381, 27 L.Ed.2d 408.[4] In this case the Court further stressed the criminal sanction test by stating:

> "If a statute made her refusal a criminal offense, and if this case were one concerning her prosecution under that statute, *Camara* and *See* would have conceivable pertinency." 400 U.S. at 325, 91 S.Ct. at 390, 27 L.Ed.2d at 418.[5]

■ In the case at bar there was admittedly no emergency present. A criminal sanction may be imposed, and has been under SDCL 3–15–3, for refusal to permit entry by the director of equalization. Upon discovering property on the premises which was not listed, other sanctions may be imposed. SDCL 10–6–20 provides:

---

**4.** South Dakota's statute providing for home visits is SDCL 28–7–7.

**5.** The *Wyman* decision went on to compare the case to one where the Internal Revenue Service

requested a taxpayer to produce proof of a deduction. If the taxpayer refused, the sanction imposed would be disallowance of the claimed deduction, resulting only in additional tax.

"Any person who shall intentionally evade, deceive, or by any manner or means, not list all the property, real or personal, of every description which he is required to list, shall, in addition to any and all other penalties, be subject to the penalty of having added to his assessment as previously listed, the amount not listed and an additional penalty of fifty per cent of the amount not listed."

An official opinion of the South Dakota Attorney General stated that imposition of the penalties of SDC 57.0341 (now SDCL 10–6–20) was mandatory.

"It is my opinion that it is the duty of the board of equalization to impose this penalty if they are satisfied that the erroneous listing was given for the purpose of evading or deceiving the taxing authorities." AGR 1953–54, at 360.

In addition, SDCL 10–6–21 provides:

"If any person shall give any false or fraudulent list, schedule, or statement required by this chapter, or shall willfully fail or refuse to deliver to the assessor, when called on for that purpose, a list of the taxable property which he is required to list under this chapter and for which no other penalty is specifically provided, or shall temporarily convert any part of his property into property not taxable, for the fraudulent purpose of preventing such property from being listed, and of evading the payment of taxes thereon, he shall be liable to a penalty of not less than fifty dollars nor more than five thousand dollars, to be recovered in any proper form of action in the name of the state on the relation of the state's attorney."

Finally, a criminal sanction may be imposed by SDCL 10–21–3 for either refusing entry or for discovering property not listed. SDCL 10–21–3 provides:

"Every person who willfully obstructs or hinders any public officer from collecting any revenue, taxes, or other sums of money, in which or in any part of which the people of this state, or any subdivision or agency thereof, are directly or indirectly interested, and which such officer is by law empowered to collect, *or who in making any oral or written statement required or authorized by law to be made as basis of imposing or collecting any tax or assessment,* or of any application to reduce, abate, or refund any tax or assessment, *willfully states any material matter which he knows to be false* is guilty of a misdemeanor."[6] (emphasis supplied)

■ The presence of criminal sanctions would thus place this case within the framework of the *Camara* and *See* decisions. Further, in this case, the primary objective of the inspection was not the welfare of the inhabitants of the Stip farm. The director's objective was to discover any property not listed on the defendant's tax assessment statement. This is precisely the same matter for which the monetary penalties and criminal sanctions are provided.

The state argues that the public interest in equitable imposition of taxes requires the right of entry; however, no one would argue that there is not a public interest in deterring crime. Where, as here, it would not frustrate the purpose of the law to require a search warrant when entry is refused, we cannot uphold a warrantless right of entry under § 11, Article VI of our constitution.

"If a valid public interest justifies the intrusion contemplated, then there is probable cause to issue a suitably restricted search warrant." *Camara v. Municipal Court,* 387 U.S. at 539, 87 S.Ct. at 1736, 18 L.Ed.2d at 941.

■ In arriving at this decision we do not hold that SDCL 10–3–23 is unconstitutional; we merely hold that the statute imposes the requirement of a warrant based on

---

**6.** This section also carries the potential punishment of SDCL 22–6–2, see note 3, supra. We also note that SDCL 10–21–3 and SDCL 3–15–3 were both part of Chapter 13.13 of SDC 1939.

probable cause when entry is refused. In determining whether probable cause exists, a magistrate must balance the need for the inspection by the director of equalization against the constitutional grant of privacy to our citizens. Section 11, Article VI, South Dakota Constitution.

Reversed.

All the Justices concur.