STATE of Missouri,
Plaintiff-Respondent,

v.

Kevin O. HURLEY,
Defendant-Appellant.

No. WD–35129.

Missouri Court of Appeals,
Western District.

Sept. 11, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
Oct. 30, 1984.

Joseph H. Locascio, Sp. Public Defender, Kansas City, for defendant-appellant.

John Ashcroft, Atty. Gen., Janet E. Papageorge, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before LOWENSTEIN, P.J., and MANFORD and BERREY, JJ.

BERREY, Judge.

The defendant was convicted of murder in the first degree and was sentenced to life imprisonment. The judge imposed the sentence, since Hurly was a persistent offender and ran it consecutive to a previously imposed life sentence. From this conviction the defendant appeals.

Marcilda Paul and her husband, George Paul, owned a "mom and pop" type store called Dodson Sundries at 2511 East 85th Street, in south Kansas City, Jackson County, Missouri. They sold beer, lunch meats, cigarettes, liquor, potato chips and knickknacks.

Just before 2:00 p.m. on August 9, 1982, two Negro females entered the store asking directions. Mrs. Paul's conversation was with the taller of the two whom she subsequently identified, from a photo, as the woman in the store. The woman was known as B.B., and she was defendant's girlfriend.

The two bought a six pack of malt liquor and left. The next customer that entered was the man who robbed them. Mrs. Paul was behind the counter and Mr. Paul was in the walk-in beer cooler.

Defendant asked Mrs. Paul for two bottles of Hennessey and she turned to get the one bottle she had and when she turned around he was gone. She heard scuffling

in the back and saw defendant bring her husband out with a gun in Mr. Paul's back. He ordered Mrs. Paul to "[g]et down on the floor." He then ordered Mr. Paul to get him the money. Mrs. Paul then heard five or six gun shots. She raised up and a shot hit a liquor bottle above her and she got down and stayed until "things quieted down ...."

The robber had fled and her husband was dying. Mr. Paul died at the store.

Mrs. Paul observed the robber's face for a few seconds. She subsequently picked his photo from numerous photos shown her by officers of the Kansas City Police Department. She had no hesitation in picking defendant out of a line-up and made positive in-court identification of defendant.

The defendant raises three points in his appeal. Point I alleges the trial court erred in not permitting him to voir dire the venire panel whether they would automatically consider opinion testimony of an expert witness to be the facts in the case; Point II alleges the trial court erred in denying defendant's motion to quash the petit jury because the state used its peremptory challenges to strike six Negroes from the venire panel. Finally, the defendant objects to introduction of any statements he made because he was not fully advised of his "rights."

The morning of trial the defendant filed a motion to suppress an oral statement the defendant made to police at the time of his arrest. The state confessed the motion as to the case in chief. The court overruled the motion to suppress as to rebuttal use. It was established that Vincent McInerney, a Kansas City Police Department patrolman, and his partner, Officer Rubenstein, stopped a vehicle they knew from past experience to be connected to Kevin Hurley. Officer Rubenstein asked the driver for his driver's license and he did not have one. McInerney heard Rubenstein say, "Kevin, get out of the car." Both officers drew their weapons and Hurley stepped out. He was searched and almost immediately he was given the *Miranda* warning. Officer McInerney then inquired, "I asked him

where he had been hiding because we had been looking for him ... I believe he said he had been in Texas and that he had just come back ...."

The officer denied coercing the defendant or making him any promise of reward for making the statement.

The defendant alleges he was not properly advised of his constitutional rights. The trial court concluded that his statements were strictly voluntary. The court said, "[T]he statement was voluntarily made after the defendant had been fully advised of his constitutional rights and he waived those rights."

McInerney testified in the case in chief and scrupulously avoided mentioning defendant's statement.

He was called as a rebuttal witness and testified he read Hurley his rights from a *"Miranda* warning card ... issued to us." He further testified neither he nor anyone else mistreated Hurley nor made him any promises if he answered the questions. He also testified that Hurley was not threatened and that he appeared to understand his rights.

■ For Point I defendant alleges that the trial court erred in not permitting him to ask the venire panel if anyone on the panel would automatically consider opinion testimony of an expert witness to be *the facts in the case.* The case of *State v. Williams,* 617 S.W.2d 98, 99 (Mo.App.1981) states it is improper for counsel to ask a venireman to speculate on the weight he would give to testimony he had not heard. The court in *State v. Olinghouse,* 605 S.W.2d 58, 68 (Mo. banc 1980) held:

[A] trial court necessarily and properly has considerable discretion in control and conduct of voir dire examination of veniremen; and an appellate court will differ or interfere with the exercise of that discretion only when the record shows a manifest abuse of discretion and a real probability of injury to the complaining party.

*Olinghouse, supra,* at 68, citing *State v. Scott,* 515 S.W.2d 524, 527[1] (Mo.1974).

*See also State v. Yowell,* 513 S.W.2d 397, 403[4–6] (Mo. banc 1974). The record does not disclose a "manifest abuse of discretion." Asking a venireman if he would consider the testimony of an expert witness to be the facts of the case most assuredly falls within the caveat of *State v. Williams, supra.* The point is ruled against appellant.

In Point II appellant alleges error because the trial court did not sustain his motion to quash the petit jury because the state used its six peremptory challenges to exclude Negroes from serving on the jury. As a result, he claims he was denied Due Process and Equal Protection of the law.

■ Missouri courts have repeatedly cited *Swain v. Alabama,* 380 U.S. 202, 223, 85 S.Ct. 824, 837, 13 L.Ed.2d 759 (1965), in stating that to attack the prosecutor's use of peremptory challenges, the appellant must prove "the prosecutor in a county, in case after case, whatever the circumstances, whatever the crime, and whoever the defendant or the victim may be, is responsible for the removal of Negroes who have been selected as qualified jurors by the jury commissioners and who have survived challenges for cause, with the result that no Negroes ever serve on petit juries." *See State v. Davison,* 457 S.W.2d 674, 677 (Mo.1970); *State v. Smith,* 465 S.W.2d 482, 485 (Mo.1971); *State v. Baker,* 524 S.W.2d 122, 124–125 (Mo. banc 1975); *State v. Brown,* 527 S.W.2d 15, 19 (Mo.App.1975); *State v. Williams,* 535 S.W.2d 128, 130 (Mo.App.1976).

■ Appellant cites *Swain* as authority for his point of error but he has failed to meet the burden *Swain* places on him. Appellant has not presented even a shred of evidence showing "case after case" systematic exclusion. Moreover, the appellant has not even alleged that systematic exclusion has occurred.

■ It is well settled in Missouri that the prosecutor may constitutionally use his peremptory strikes to eliminate *anyone* he chooses from the jury in a particular case. *Swain, supra; Davison, supra; Smith,*

*supra; Baker, supra; State v. Brookins,* 468 S.W.2d 42 (Mo.1971); *State v. Kelly,* 506 S.W.2d 61 (Mo.App.1974); *Brown, supra; Williams, supra.* Point II is denied.

■ The last point raised is briefly addressed. Officer McInerney knew there was an outstanding robbery warrant for the defendant and when he found him driving a vehicle that he and his partner had stopped he placed him in a search position, searched and arrested him. The prosecuting attorney inquired if the *Miranda* warning was administered to defendant. Officer McInerney replied, "Yes, he was read his rights."

The defendant complains that during the trial the rights the detective gave were not enunciated and elucidated with great particularity to show that defendant was *really* advised of his rights; that for the detective to testify he gave him the *Miranda* warning is not sufficient.

By reading the *Miranda* card to the defendant he was effectively advised of his rights. Further, there was no showing that Hurley was incapable of understanding his rights.

The trial judge heard the evidence and concluded that Hurley's statement was voluntary.

In *State v. Hull,* 595 S.W.2d 49, 52–53 (Mo.App.1980) the court quoting *Sims v. Georgia,* 385 U.S. 538, 544, 87 S.Ct. 639, 643, 17 L.Ed.2d 593 (1967) concluded, "[a]lthough the judge need not make formal findings of fact or write an opinion, his conclusion that the confession is voluntary must appear from the record with unmistakable clarity." The trial judge's ruling herein was quite proper. The court stated in *State v. Simpson,* 606 S.W.2d 514, 516–517 (Mo.App.1980):

The state's burden to establish that an in-custodial confession was voluntary is met by a prima facie showing that the defendant was informed of his rights, that he was capable of understanding those rights and that no physical force,

threats, promises or coercive tactics were used to obtain the confession.

Appellant's Point III is denied.

Judgment affirmed.

All concur.