**David E. WALTON, Appellee,**

v.

**Paul CASPARI, and William L. Webster,\* Appellants.**

**No. 89–1487.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 14, 1990.

Decided Oct. 16, 1990.

Rehearing and Rehearing En Banc Denied Dec. 6, 1990.

---

\* Paul Caspari succeeded Myrna Trickey as superintendent of the Missouri Eastern Correctional Center during the pendency of this appeal. Accordingly, we substitute Paul Caspari for Myrna Trickey. *See* Fed.R.Civ.P. 25(d); Fed.R.App.P.

43. Attorney General William L. Webster is a proper party respondent, *see* 28 U.S.C. § 2254 Rule 2(b), and has submitted briefs and argued this action on appeal. We also join the Attorney General as a party respondent.

Patrick King, Asst. Atty. Gen., Jefferson City, Mo., for appellants.

Howard B. Eisenberg, Carbondale, Ill., for appellee.

Before McMILLIAN and FAGG, Circuit Judges, and STROM,** District Judge.

McMILLIAN, Circuit Judge.

The State of Missouri appeals from a final order entered in the United States District Court[1] for the Eastern District of Missouri conditionally granting David E. Walton's petition for a writ of habeas corpus. *Walton v. Trickey*, No. 87–1510–C(2) (E.D.Mo. Mar. 6, 1989) (order). For reversal, the state argues that the district court erred in (1) finding that Walton had not committed procedural default, (2) applying retroactively *Garrett v. Morris*, 815 F.2d 509 (8th Cir.) (*Garrett*), cert. denied, 484 U.S. 898, 108 S.Ct. 233, 98 L.Ed.2d 191 (1987), and (3) making factual findings on disputed issues of fact without a hearing. For the reasons discussed below, we affirm the order of the district court.

## I.

In 1984 Walton, who is African–American, was charged with first degree robbery, first degree tampering, and armed criminal action in the Circuit Court of St. Louis, Missouri. During the course of jury selection, the prosecutor used all 14 peremptory challenges to exclude 14 of the 15 African–American venirepersons. Walton moved for a mistrial and a new trial based on the prosecutor's discriminatory use of peremptory challenges to exclude the African–American venirepersons. Although he was not required to do so, the prosecutor volunteered the reasons he struck the African–American venirepersons. The state trial court denied Walton's motion. Walton and co-defendant Sidney Hamilton (also African–American) were convicted on all counts by an all-white jury.[2] Walton was sentenced as an habitual offender to 15

years on the robbery count, 10 years on the tampering count, and 5 years on the armed criminal action count.[3]

On direct appeal, Walton contended that the prosecutor's exercise of peremptory challenges violated his sixth amendment right to a jury selected from a fair cross-section of the community. *See Lockhart v. McCree*, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986); *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975).[4] The Missouri Court of Appeals affirmed the conviction, holding that Walton had not sustained his burden under *State v. Hurley*, 680 S.W.2d 209 (Mo.Ct. App.1984), and *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) (*Swain*), of showing systematic exclusion in violation of the equal protection clause. *State v. Walton*, 703 S.W.2d 540, 542 (Mo.Ct.App.1985) (*Walton*). The Missouri Supreme Court denied Walton's motion to transfer on February 18, 1986. On April 30, 1986, the United States Supreme Court decided *Batson v. Kentucky*, 476 U.S. 79, 95–96, 106 S.Ct. 1712, 1722–23, 90 L.Ed.2d 69 (1986) (*Batson*), which partially overruled *Swain* by holding that an equal protection violation could be established based on the prosecutor's discriminatory exercise of peremptory challenges in a single case. Walton subsequently filed a motion to recall mandate based on *Batson*, but the motion was summarily denied.

Walton filed the instant petition for a writ of habeas corpus in federal district court on August 17, 1987, alleging that the prosecutor's exercise of peremptory challenges to exclude African–American venirepersons violated his sixth amendment right to an impartial jury and his fourteenth amendment right to equal protection of the laws. The district court referred the mat-

---

** The Honorable Lyle E. Strom, Chief Judge, United States District Court for the District of Nebraska, sitting by designation.

1. The Honorable Edward L. Filippine, Chief Judge, United States District Court for the Eastern District of Missouri.

2. The only African–American venireperson not excluded by the prosecutor served as an alternate but did not participate in deliberations.

3. The robbery and tampering sentences are concurrent, and the sentence for armed criminal action is consecutive to the other sentences.

4. In *Holland v. Illinois*, —— U.S. ——, 110 S.Ct. 803, 806–07, 107 L.Ed.2d 905 (1990), the Supreme Court held that the sixth amendment fair cross-section requirement applied to the venire but not the petit jury.

ter to a magistrate [5] pursuant to 28 U.S.C. § 636(b). On December 18, 1987, the magistrate concluded that Walton had exhausted his state remedies, but had failed to show systematic exclusion as required by *Swain*, and that there was no sixth amendment exception to the equal protection analysis of *Swain*. *Walton v. Trickey*, No. 87–1510–C(2) (Dec. 18, 1987) (report and recommendation). On April 13, 1988, the district court adopted the magistrate's findings on the exhaustion and sixth amendment issues, but remanded the fourteenth amendment equal protection claim for further consideration in light of this court's decision in *Garrett*. On November 10, 1988, the magistrate concluded that because *Garrett* did not establish a "new rule" but was merely a logical extension of *Swain*, *Garrett* should be applied retroactively to Walton's conviction. Slip op. at 7–9 (Nov. 10, 1988) (report and recommendation following remand) (hereinafter report). The magistrate found that Walton had established a violation of his equal protection rights under *Garrett*, 815 F.2d at 513, which held that *Swain*'s presumption of lawfulness in the exercise of peremptory challenges does not apply when prosecutors offer reasons for their use of peremptory challenges on the record. Report at 14–15. The magistrate recommended that Walton's petition be conditionally granted and that he be released from custody unless the state began proceedings to retry him and correct the constitutional violation within a reasonable time after the final order of the district court. On March 6, 1989, the district court adopted the magistrate's recommendation and conditionally granted the writ. This timely appeal followed.

## II.

### A. Procedural Default and Exhaustion

■ The state first argues that the district court should not have reviewed Walton's equal protection claim because Walton failed to fairly present the issue to the state courts on direct appeal. The state argues that consideration of the claim is barred by the procedural default rule of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), and that Walton has not shown cause and prejudice necessary to excuse the default. The state contends that Walton expressly disavowed reliance on equal protection when he presented his direct appeal to the Missouri Court of Appeals and that Walton's motion to recall the mandate was not the proper procedural vehicle in which to raise the equal protection issue after *Batson* was decided. Walton admits that he framed his challenge to the prosecutor's exclusion of the African–American venirepersons in sixth amendment terms on his direct state appeal, but he argues that the Missouri Court of Appeals in fact decided his appeal on equal protection as well as sixth amendment fair cross-section grounds. Walton emphasizes that the Missouri Court of Appeals cited equal protection precedent in rejecting his appeal, and he argues that this establishes that the court actually considered and rejected his claim on equal protection as well as sixth amendment grounds. Walton further argues that he satisfied the exhaustion requirement by expressly raising the equal protection claim in his motion to recall the mandate. Walton alternatively argues that exhaustion was not necessary because it would have been futile. *See, e.g., Moore v. Wyrick*, 668 F.2d 1007, 1009 (8th Cir.1982) (exhaustion either because no other presently available state remedies or substance of federal claims fairly presented to state courts).

Exhaustion of available state remedies is a prerequisite to seeking habeas relief. *See* 28 U.S.C. § 2254(b); *Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 276–77, 92 S.Ct. 509, 512–13, 30 L.Ed.2d 438 (1971). We must determine whether Walton provided "the state courts with a 'fair opportunity' to apply controlling legal principles to the

---

**5.** The Honorable Carol E. Jackson, United States Magistrate for the Eastern District of Missouri.

facts bearing upon his [equal protection] constitutional claim." *Anderson v. Harless*, 459 U.S. at 6, 103 S.Ct. at 277 (quoting *Picard v. Connor*, 404 U.S. at 276–77, 92 S.Ct. at 512–13). In the present case, the district court found that Walton had exhausted state remedies by raising the sixth amendment claim in his direct appeal and the equal protection claim in his motion to recall the mandate. *Walton v. Trickey*, No. 87–1510–C(2), slip op. at 2 (Apr. 13, 1988) (order). We cannot conclude this was error.

Before the Missouri Court of Appeals, Walton admitted that challenges of the prosecutor's exercise of peremptory challenges in a single case "have been rejected under an equal protection analysis that requires a record of county-wide discrimination to be developed over a period of year[s]." Brief for Appellant at 20 (citing *Swain* and *State v. Baker*, 524 S.W.2d 122 (Mo.1975) (banc) (*Baker*)), *State v. Walton*, 703 S.W.2d 540 (Mo.Ct.App.1985). Walton's citation of *Swain* and *Baker* may have been sufficient in and of itself to provide the state courts with a fair opportunity to apply controlling legal principles to his equal protection claim. *See Graham v. Solem*, 728 F.2d 1533, 1535 (8th Cir.) (banc) ("[c]itation to a provision of the federal constitution or a case addressing the constitutional basis of the claim, or a discernible reference to a federal constitutional right is all that is normally required" to satisfy the 28 U.S.C. § 2254 exhaustion requirement), *cert. denied*, 469 U.S. 842, 105 S.Ct. 148, 83 L.Ed.2d 86 (1984); *Morrow v. Wyrick*, 646 F.2d 1229, 1232 (8th Cir.) (court considers fact that state cited two of the landmark Supreme Court cases on the confrontation clause in state court as evidence that the state "was able to identify the substance of petitioner's points of error"), *cert. denied*, 454 U.S. 899, 102 S.Ct. 401, 70 L.Ed.2d 216 (1981).

Even assuming that Walton expressly disavowed reliance on the equal protection component of his claim and instead cast it in purely sixth amendment terms, the record demonstrates that the Missouri Court of Appeals actually considered and rejected Walton's claim on *both* fourteenth amendment equal protection and sixth amendment fair cross-section grounds. The Missouri Court of Appeals rejected Walton's claim that a constitutional violation could be established by the prosecutor's discriminatory exercise of peremptory challenges in a single case, holding that defendants are required "to show systematic exclusion of blacks as trial jurors by use of peremptory challenges." *Walton*, 703 S.W.2d at 541–42, *citing Hurley*, 680 S.W.2d at 212, *and Swain*, 380 U.S. 202, 85 S.Ct. 824. *Swain*, of course, was the landmark equal protection case on peremptory challenges prior to *Batson*. In *Hurley*, the Missouri Supreme Court rejected, on equal protection grounds, a challenge to the prosecutor's exercise of peremptory challenges. 680 S.W.2d at 212. In *State v. Sims*, 639 S.W.2d 105, 108–09 (Mo.Ct.App.1982), another case relied on by the *Walton* court, the Missouri Court of Appeals followed *Swain* in rejecting a sixth amendment fair cross-section challenge to the prosecutor's use of peremptory challenges. We believe the citation by the Missouri Court of Appeals to three equal protection cases in dismissing Walton's appeal confirms that it actually considered and rejected the unexpressed equal protection component of his claim. A habeas "[p]etitioner need not actually have raised a claim in a state petition in order to satisfy the exhaustion [requirement], if a state court with the authority to make final adjudications actually undertook to decide the claim on its merits in petitioner's case." 1 J. Liebman, Federal Habeas Corpus Practice and Procedure § 5.3, at 49 (1988) (footnote omitted). We agree with the Eleventh Circuit that even a single citation of federal precedent by the state court may make it "clear that the court was aware of a federal constitutional basis for petitioner's claim and that the court actually considered federal constitutional law in deciding that claim." *Sandstrom v. Butterworth*, 738 F.2d 1200, 1206 (11th Cir.1984), *cert. denied*, 469 U.S. 1109, 105 S.Ct. 787, 83 L.Ed.2d 781 (1985). Because "a state court's decision to raise and answer a constitutional question *sua sponte* will also

permit subsequent federal habeas review," *Cooper v. Wainwright,* 807 F.2d 881, 887 (11th Cir.1986), *cert. denied,* 481 U.S. 1050, 107 S.Ct. 2183, 95 L.Ed.2d 839 (1987), we hold that Walton exhausted his state remedies and it was permissible for the district court to consider the merits of Walton's equal protection claim on habeas review.[6]

## B. Application of *Batson* and *Garrett*

The state next argues that the district court erred in applying *Garrett* retroactively. In *Garrett,* 815 F.2d at 513, we held that once prosecutors volunteer their reasons for the exercise of peremptory challenges, they are no longer entitled to the *Swain* presumption that they exercised their peremptory challenges in a lawful manner. The state contends that *Garrett* announced a "new rule" within the meaning of *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion) (*Teague*), and the district court should not have retroactively applied *Garrett* to Walton's petition for habeas relief. In response, Walton contends that he was entitled to the application of *Batson* because his case was not final when *Batson* was decided on April 30, 1986. Assuming he is not entitled to application of *Batson,* Walton contends that because *Garrett* is only a logical extension of *Swain, Garrett* is not a "new rule" and the district court did not err in retroactively applying *Garrett.*

We disagree with Walton's contention that he is entitled to the application of *Batson. Batson* applies to all cases not final when it was decided. *Griffith v. Kentucky,* 479 U.S. 314, 316, 107 S.Ct. 708, 710, 93 L.Ed.2d 649 (1987). *Batson* cannot be applied retroactively to cases that were final on April 30, 1986, the date *Batson* was decided. *Allen v. Hardy,* 478 U.S. 255, 260, 106 S.Ct. 2878, 2881, 92 L.Ed.2d 199 (1986) (per curiam). The Supreme Court stated that a judgment of conviction is final when " 'the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed before our decision in' *Batson v. Kentucky." Id.* at 258 n. 1, 106 S.Ct. at 2880 n. 1 (quoting *Linkletter v. Walker,* 381 U.S. 618, 622 n. 5, 85 S.Ct. 1731, 1734, n. 5, 14 L.Ed.2d 601 (1965)). We must therefore determine whether Walton's conviction was final on April 30, 1986. The Missouri Court of Appeals affirmed Walton's conviction on December 17, 1985. *Walton,* 703 S.W.2d 540. The Missouri Court of Appeals denied Walton's motion for rehearing and/or transfer on January 21, 1986. *Id.* The Missouri Supreme Court denied Walton's application to transfer his case to that court on February 18, 1986. Under the Supreme Court Rules in effect at the time Walton's application to transfer was denied, he had 60 days[7] from Febru-

6. The district court held that Walton provided the state courts with a fair opportunity to address his equal protection claim by raising it in his motion to recall the mandate. *Walton v. Trickey,* No. 87–1510–C(2), slip op. at 2 (E.D.Mo. Apr. 13, 1988) (order). We give great deference to a district court's interpretation of the law of the state in which it sits. *Williams v. Wyrick,* 763 F.2d 363, 365 (8th Cir.1985) (per curiam). A district court's interpretation of state law will be reversed only if it is fundamentally deficient in analysis or otherwise lacking in reasoned authority. *Davis v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 906 F.2d 1206, 1215 (8th Cir. 1990); *Perkins v. Clark Equip. Co.,* 823 F.2d 207, 208 (8th Cir.1987). Because we hold that the Missouri Court of Appeals actually considered and rejected Walton's equal protection claim, we need not decide whether a motion to recall the mandate was the proper procedural vehicle to raise the equal protection claim. *Compare State v. Thompson,* 659 S.W.2d 766, 769 (Mo. 1983) (banc) ("our courts have properly recog-

nized that a mandate may be recalled in order to remedy a deprivation of the federal constitutional rights of a criminal defendant") *with Williams v. Wyrick,* 763 F.2d at 365 (motion to recall mandate a "limited" remedy; proper procedure for obtaining postconviction relief is by way of motion pursuant to Mo.Sup.Ct.R. 27.26). Nor do we need to address Walton's claim that it was not necessary to exhaust state court remedies because it would have been futile. *See Piercy v. Black,* 801 F.2d 1075, 1077–78 (8th Cir.1986).

7. We disagree with Walton's contention that he had 90 days from the date his application to transfer was denied to file his petition for certiorari. Although Sup.Ct.R. 20.1 (1980) (emphasis added) permits a "Justice of [the Supreme] Court, *for good cause shown,* [to] extend the time for applying for a writ of certiorari in such cases for a period not exceeding 30 days," Walton failed to file a motion with the United States

ary 18, 1986, to file his petition for certiorari. *See* Sup.Ct.R. 20.1 (1980).[8] Walton thus had until on or about April 19, 1986, to file his petition for certiorari. Because Walton did not file a petition for certiorari, his conviction became final within the meaning of *Allen v. Hardy* on April 19, 1986, 60 days after his application to transfer was denied and 11 days before *Batson* was decided. Walton therefore is not entitled to the application of *Batson*.

We now turn to whether the district court erred in applying *Garrett* retroactively to Walton's case. In *Teague,* a plurality of the Supreme Court held that, with two exceptions,[9] "new rules" of constitutional criminal procedure should be applied retroactively to cases on direct review, but generally should not be applied retroactively to cases on collateral review. 109 S.Ct. at 1072–75. Because we are reviewing Walton's conviction on collateral review, we must determine whether *Garrett* announced a new rule of constitutional criminal procedure or merely applied the principles of *Swain* to a different factual situation.

In *Teague,* the Supreme Court reformulated the standard for determining when a case announces a new rule of constitutional criminal procedure:

It is admittedly often difficult to determine when a case announces a new rule, and we do not attempt to define the spectrum of what may or may not constitute a new rule for retroactivity purposes. In general, however, a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government.... To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final.

*Id.* 109 S.Ct. at 1070 (emphasis in original).

In recent retroactivity cases, the Supreme Court has further illuminated and applied the test for determining when a new rule has been announced. For example, in *Butler v. McKellar,* —— U.S. ——, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990), the Court held that whether a rule is new or merely an application of existing precedent can be determined in part by whether the rule "was susceptible to debate among reasonable minds." *Id.* at 1217. The Court explained that "[t]he 'new rule' principle ... validates reasonable, good-faith interpretations of existing precedents made by state courts even though they are shown to be contrary to later decisions." *Id.* In *Saffle v. Parks,* —— U.S. ——, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990) (*Saffle*), the Supreme Court held that a rule would not be "new" if the state court "would have felt compelled by existing precedent to conclude that the rule [petitioner] seeks was required by the Constitution." *Id.* 110 S.Ct. at 1260. Factors that should be con-

---

Supreme Court to extend the time for filing a petition for certiorari.

**8.** The Supreme Court revised and renumbered its rules effective January 1, 1990. *See* Sup. Ct.R. 48. The text of Sup.Ct.R. 20.1 was moved to Sup.Ct.R. 13.1 and was revised to provide that petitions for certiorari must be filed within *"90 days after the entry of the order denying discretionary review."* (Emphasis added.) If the 1990 Supreme Court Rules had been in effect at the time Walton's conviction was affirmed, his conviction would not have been final until May 19, 1986, 19 days after the *Batson* decision. However, under the 1980 version of the rules, his conviction was final on April 19, 1986, 60 days after his application to transfer was denied and 11 days before *Batson* was decided.

**9.** New rules of constitutional criminal procedure will be applied retroactively on collateral review in two circumstances. First, a rule will be applied retroactively when it decriminalizes a class of conduct previously proscribed, *see Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 1073, 103 L.Ed.2d 334 (1989) (plurality) (*Teague*), or prohibits the state from imposing certain punishments for a given offense, *see Penry v. Lynaugh,* —— U.S. ——, 109 S.Ct. 2934, 2952, 106 L.Ed.2d 256 (1989) (plurality). A new rule will also be applied retroactively in collateral proceedings when it is necessary to insure observance of those procedures that are "implicit in the concept of ordered liberty." *Teague,* 109 S.Ct. at 1073, 1075–77, *citing Mackey v. United States,* 401 U.S. 667, 693, 91 S.Ct. 1160, 1180, 28 L.Ed.2d 404 (1971) (separate opinion of Harlan, J.) (internal citations omitted); *see also Butler v. McKellar,* —— U.S. ——, 110 S.Ct. 1212, 1218, 108 L.Ed.2d 347 (1990) (same).

sidered in determining whether the rule was dictated by precedent existing at the time the petitioner's conviction became final include whether the existing precedent speaks to the issue and how other courts had ruled on the question at the time the petitioner raised the issue. *See id.* at 1261. With these retroactivity principles in mind, we examine whether *Garrett* merely applied the principles of *Swain* or whether it announced a new rule.

We believe it is worth quoting the magistrate's well-reasoned report and recommendation, which was adopted by the district court, on the relationship of *Garrett* to *Swain:*

> In *Swain,* the Supreme Court accorded a presumption of lawfulness to peremptory challenges and required that a complainant challenging the exercise of peremptory strikes, establish a systematic exclusion of blacks from petit juries over a period of time.... The Eighth Circuit did not announce a new constitutional privilege or doctrine in *Garrett* but merely applied extant principles to a different factual situation.
>
> The logical extension of *Swain* is that once reasons for peremptory challenges are volunteered, any presumption as to lawfulness becomes unnecessary and, in some instances, could be an absurdity in light of the reasons that may be given. Thus, ... *Garrett* is not antithetical to *Swain,* but is in fact a logical extension of the *Swain* holding....
>
> ....
>
> ... At first blush, *Swain* appears to hold that only the *systematic* exclusion of black venirepersons constitutes a violation of a defendant's Fourteenth Amendment rights.... *Swain* [need not be read] so narrowly as to hold that the *systematic* exclusion of blacks is the [sole] measure of an individual's constitutional rights. *Swain* clearly held that a state's purposeful or deliberate denial of participation as a juror on account of race violates the Equal Protection Clause. *Swain,* 380 U.S. at 203–204 [85 S.Ct. at 826–827]. *Swain* only enunciates the systematic exclusion doctrine in the context of the burden of proof necessary to overcome the presumption of propriety of peremptory challenges given the valued position these challenges hold in our jurisprudence. However, the presumption dissipates when reasons for challenges are volunteered, and the stringent burden of proof of showing a systematic exclusion is no longer necessary. Thus, once the reasons for peremptory challenges are volunteered, a finding of exclusion of one or more venirepersons for discriminatory reasons constitutes a violation of the equal protection clause of the Fourteenth Amendment.

Report at 7–8, 14–15 (emphasis in original) (footnote omitted).

We hold that the district court did not err in holding that Walton was entitled to the retroactive application of *Garrett.* Several reasons persuade us that *Garrett* did not announce a new rule within the meaning of *Teague* and its progeny. First, in *Garrett* we held that once a prosecutor offered reasons for the exercise of peremptory challenges, a court could, consistent with *Swain,* scrutinize such reasons for compliance with the equal protection clause. *See* 815 F.2d at 511. To that extent, we already decided in *Garrett* itself that *Garrett* is consistent with *Swain,* and we decline to reconsider our decision in *Garrett* today.

Secondly, it is important to understand that *Swain* had two distinct and, to some extent, irreconcilable holdings. While *Swain* is most renowned for its now overruled holding that prosecutors are presumed to have exercised their peremptory challenges in a lawful manner, *see* 380 U.S. at 222–23, 85 S.Ct. at 837–38, the Court also held, and reaffirmed, that "a State's purposeful or deliberate denial to Negroes on account of race of participation as jurors in the administration of justice violates the Equal Protection Clause." *Id.* at 203–04, 85 S.Ct. at 826–27, *citing Ex parte Virginia,* 100 U.S. 339, 25 L.Ed. 676 (1880), *and Gibson v. Mississippi,* 162 U.S. 565, 16 S.Ct. 904, 40 L.Ed. 1075 (1896); *see also Strauder v. West Virginia,* 100 U.S. 303, 25 L.Ed. 664 (1880). "This principle has been 'consistently and repeatedly' re-

affirmed ... in numerous decisions of this Court both preceding and following *Swain.*" *Batson,* 476 U.S. at 84, 106 S.Ct. at 1716 (footnote omitted) (quoting *Swain,* 380 U.S. at 204, 85 S.Ct. at 827). Under *Swain,* a defendant can establish a prima facie case of purposeful discrimination by proving that the prosecutor used his or her peremptory challenges "to exclude blacks from the jury 'for reasons unrelated to the outcome of the particular case on trial' or to deny to blacks 'the same right and opportunity to participate in the administration of justice enjoyed by the white population.'" *Batson,* 476 U.S. at 91, 106 S.Ct. at 1720 (quoting *Swain,* 380 U.S. at 224, 85 S.Ct. at 839). The *Swain* Court sought to accommodate, albeit unsuccessfully, "the prosecutor's historical privilege of peremptory challenge free of judicial control and the constitutional prohibition on exclusion of persons from jury service on account of race." *Batson,* 476 U.S. at 91, 106 S.Ct. at 1720 (citations omitted). On the one hand, the exercise of peremptory challenges by prosecutors is presumed, but is not *per se,* lawful. *Swain,* 380 U.S. at 222, 85 S.Ct. at 837. On the other hand, once prosecutors voluntarily offer their reasons for exercising their peremptory challenges, the presumption of lawfulness vanishes and we are compelled to effectuate *Swain's* equal protection holding by determining whether the venirepersons were excluded because of their race. *See Garrett,* 815 F.2d at 511–12. In our view, *Garrett* can be read as announcing a new rule only if *Swain's* holding that the exercise of peremptory challenges is presumptively lawful is emphasized over *Swain's* other holding that the exercise of peremptory challenges to exclude venirepersons because of their race violates the equal protection clause.

We are persuaded that precedent existing at the time of Walton's direct appeal required the Missouri Court of Appeals to examine the prosecutor's reasons for the exercise of his peremptory challenges once he volunteered his reasons for doing so. *See Saffle,* 110 S.Ct. at 1260; *Teague,* 109 S.Ct. at 1070. First, as discussed above, the Missouri Court of Appeals was required to implement *Swain's* two-part

holding. Secondly, at the time that court reviewed Walton's conviction, it had the benefit of our decision in *United States v. Greene,* 626 F.2d 75 (8th Cir.) (*Greene*), cert. denied, 449 U.S. 876, 101 S.Ct. 220, 66 L.Ed.2d 98 (1980). In *Greene,* the prosecutor used five of six peremptory challenges to exclude all the African–American venirepersons. *Id.* at 76. We held that, under *Swain,* a prosecutor's decision to use his or her peremptory challenges will be presumed proper *unless the record reveals that the challenges were used for impermissible reasons. Id.; see Garrett,* 815 F.2d at 512. The Missouri Court of Appeals also had the benefit of the Ninth Circuit's decision in *Weathersby v. Morris,* 708 F.2d 1493 (9th Cir.1983) (*Weathersby*), cert. denied, 464 U.S. 1046, 104 S.Ct. 719, 79 L.Ed.2d 181 (1984). In *Weathersby,* the court held that once the prosecutor voluntarily puts his or her reasons for the peremptory challenges on the record,

> the prosecutor can no longer be cloaked by the presumption of correctness. Our reading of *Swain,* convinces us that in such circumstances a court need not blind itself to the obvious and the court may review the prosecutor's motives to determine whether "the purposes of the peremptory challenge are being perverted," *Swain,* 380 U.S. at 224, 85 S.Ct. at 838, by excluding an identifiable group "from juries for reasons wholly unrelated to the outcome of the particular case on trial." *Id.*

708 F.2d at 1496. In *Garrett,* we relied on *Weathersby* and *Greene* and held that the prosecutor's explanations for the exercise of peremptory challenges must be scrutinized when volunteered on the record. *See* 815 F.2d at 511–13. We believe that the precedents of *Swain, Greene,* and *Weathersby* dictated that the Missouri Court of Appeals examine the prosecutor's reasons for the exercise of peremptory challenges once he stated them on the record.

We also draw support for our conclusion that *Garrett* did not announce a new rule from Justice White, the author of *Swain.* In his concurring opinion in *Batson,* Justice White made it clear that under *Swain,* once

a prosecutor offered reasons for striking African–American venirepersons, these reasons could be scrutinized and invalidated under the equal protection clause if they were racially motivated:

> Nor would it have been inconsistent with *Swain* for the trial judge to invalidate peremptory challenges of blacks if the prosecutor, in response to an objection to his strikes, stated that he struck blacks because he believed they were not qualified to serve as jurors, especially in the trial of a black defendant.

*Batson,* 476 U.S. at 101 n. *, 106 S.Ct. at 1725 n. * (White, J., concurring).

In sum, we hold that *Garrett* "did not announce a new rule because it was 'merely an application of [existing] principle[s],' " *Teague,* 109 S.Ct. at 1073 (quoting *Yates v. Aiken,* 484 U.S. 211, 216–17, 108 S.Ct. 534, 537–38, 98 L.Ed.2d 546 (1988)), and therefore the district court did not err in holding that *Garrett* could be applied retroactively to Walton's case.

### C. Alleged Improper Findings of Fact

■ Having concluded that the district court did not err in applying *Garrett* retroactively, we turn to the state's final allegation of error. The state argues that the district court improperly resolved disputed issues of fact without holding an evidentiary hearing. The state argues that this case should be reversed and remanded for an evidentiary hearing to determine whether the prosecutor's exclusion of all but one of the African–American venirepersons and his failure to challenge similarly situated, white venirepersons was justified by nonracial trial considerations. The state further argues that the state court trial record fails to support the district court's findings that the prosecutor's use of peremptory challenges to exclude African–American venirepersons violated the equal protection clause. We disagree.

■ It is well established that an evidentiary hearing on a habeas corpus petition is not required where the issues can be resolved on the basis of the record. *Hill v. Lockhart,* 731 F.2d 568, 572 (8th Cir.1984), *aff'd,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d

203 (1985). An evidentiary hearing is specifically not required where a record of the alleged error was made in state court and the district court independently reviewed the transcript of the state court proceeding. *Mitchell v. Wyrick,* 698 F.2d 940, 944 (8th Cir.), *cert. denied,* 462 U.S. 1135, 103 S.Ct. 3120, 77 L.Ed.2d 1373 (1983). In the present case, the prosecutor offered his reasons for striking the African–American venirepersons on the record, and the magistrate and the district court each independently reviewed the state court record. In addition, the magistrate and the district court each considered an affidavit filed in the district court by the prosecutor in opposition to Walton's petition. *See* Joint Appendix at 60–62 (affidavit of David M. Minnick). Under these circumstances, the magistrate and the district court could properly rely on the state court record and no evidentiary hearing was required.

The record in the present case clearly reflects that the prosecutor used all 14 peremptory challenges to exclude all but one of the African–American venirepersons, while he failed to exclude several white venirepersons who possessed the same allegedly objectionable characteristics as the excluded African–American venirepersons. For example, the prosecutor excluded African–American venirepersons Burnett, Greene, and Ellis because each was a member of the nursing profession, and the prosecutor believed, based on his experience, that "nurses or those in the nursing profession tended to give people a second chance." Report at 11. The magistrate noted that although "this may have been a proper trial-related consideration," *id.,* the prosecutor failed to challenge white venirepersons Bursatti and Hacker, each of whom was also in the nursing profession. *Id.* As the magistrate noted, "[i]f, as the prosecutor asserted, those involved in nursing tend to be sympathetic to the defense, then this tendency would seem to apply regardless of race." *Id.* at 12. Similarly, the prosecutor excluded African–American venirepersons Shavers and Brown because each had friends or relatives who had been charged with or convicted of a crime.

However, the prosecutor did not challenge several white jurors who had "stated that they, too, had friends and relatives who had been convicted of crimes and, in some cases, crimes that were similar to those charged against [Walton]." *Id.* In particular, as noted by the magistrate, the record establishes that

> [white] venireperson Gibson's son had previously been convicted of burglary and was facing a then-pending charge of receiving stolen property. [White v]enireperson Barton's husband had been convicted of burglary and [white] venireperson Hickey's friend had been convicted of an offense involving the use of a knife. Additionally, [white] venireperson Gremminger knew a man who had been prosecuted for selling drugs and a nephew of [white] venireperson Rogers had served time for an unspecified offense.

*Id.* at 12–13.

In *Garrett*, we recognized that an equal protection violation could be established if prosecutors use their peremptory challenges to exclude African–American venirepersons for a given reason or reasons, but then fail to apply the same reason or reasons to exclude similarly situated, white venirepersons. 815 F.2d at 513–14. In the present case the prosecutor stated his reasons for excluding all the African–American venirepersons on the record. The district court found that those reasons were pretextual because they were not consistently applied to whites. The state court record was fully developed and supplemented by an affidavit. Nothing could be accomplished by remanding this case for an evidentiary hearing and further findings. Accordingly, we hold that the record supports the district court's finding that the prosecutor's use of peremptory challenges violated the equal protection clause.

### III.

In sum, we hold that (1) the district court did not err in holding that Walton had fairly presented his equal protection claim to the state courts, (2) Walton is not entitled to application of *Batson*, (3) the district court did not err in applying *Garrett* retro-

actively to Walton's case, (4) the district court did not err in deciding Walton's equal protection claim without holding an evidentiary hearing, and (5) the record supports the district court's finding that the prosecutor's use of peremptory challenges violated the equal protection clause.

Accordingly, the order of the district court conditionally granting Walton's petition for a writ of habeas corpus is affirmed. It is hereby ordered that Walton be discharged from custody unless the state commences proceedings to retry him within 60 days from the date of this decision.