STATE of South Dakota, Plaintiff
and Appellee,

v.

Tommy JORGENSEN, Defendant
and Appellant.

No. 13815.

Supreme Court of South Dakota.

Submitted on Briefs Feb. 14, 1983.

Decided May 11, 1983.

Grant E. Gormley, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.

Dennis Duncan of Zimmer, Richter & Duncan, Parker, for defendant and appellant.

WOLLMAN, Justice.

This is an appeal from a judgment of conviction for arson, conspiracy to commit arson, and defrauding an insurer. We affirm.

At 2:00 a.m. on July 14, 1981, the Lennox Fire Department was called to a fire at defendant's house in Lennox, South Dakota. Defendant was in Iowa at the time. The firemen spent about an hour fighting this fire. The fire damage from this fire was confined to the outside of the house and one room within the house. Fire Chief Steever and two firemen later returned to the house to check for hot spots. They found no hot spots and determined that the fire was completely extinguished. About one-half hour later, approximately 4:50 a.m., the fire department was again called to a fire at defendant's house. At this time, the fire was totally out of control and the roof was totally gone. After fighting the fire for some forty minutes with all of the equipment at their disposal, Chief Steever and his men were able to bring the blaze under control. Because he had never in his twenty-seven years of experience as a fireman seen a building so thoroughly consumed and destroyed in so short of time as was defendant's in the second outbreak of flames,

Chief Steever put in a call for Pat Harrington, Deputy State Fire Marshall. Harrington received the call at approximately 6:00 a.m. Following a two-hour drive, he arrived at the scene at approximately 8:00 a.m. and was soon joined by Chief Steever. Harrington testified that although the fire "had been pretty much extinguished" by the time he arrived, there were still some smoldering hot spots. While Harrington was conducting his investigation into the cause of the fire, Chief Steever took steps to investigate whether the electrical connections to the house had been adequately covered.

During his initial investigation, Harrington took photographs of the house as well as a char sample. An hour or so later he conducted a second investigation and several weeks later he conducted a third. Neither a search warrant nor consent was obtained prior to any of the investigations. At trial, Harrington testified that it was his opinion that the house had been set on fire.

Defendant admitted at trial that he had spoken to four people about burning down his house and that he had told them not to tell him about it if they did burn down the house. Defendant also admitted that he had signed and submitted a claim to his insurance company. In a July 31, 1981, letter to the insurance company, defendant wrote that he had spoken to four individuals about burning down his house, but that he did not believe a fire would occur. He also wrote that if one of these individuals did burn down the house, he, rather than the insurance company, would pay for the loss.

Mike Tieszen, one of the four individuals defendant had spoken to about burning down his house, was granted transactional and use immunity by the State. Tieszen testified that defendant had told him that he wanted his house burned down, and that if Tieszen could get the job done the debt of approximately $140 that he owed defendant would be cleared. Tieszen testified that he in fact did start defendant's house on fire on July 14, 1981. Tieszen also testified that after the fire he and defendant had dis-cussed the occurrence of, but not Tieszen's involvement in, the fire, and that defendant had stated that "he would like to shake the person's hand that done it."

Following a suppression hearing on defendant's pretrial motion to suppress the evidence seized and the opinions formed during Harrington's investigations, the trial court ruled that there was sufficient exigency to justify Harrington's initial investigation at 8:00 a.m. and denied the motion to suppress with regard to evidence obtained at this time. The trial court ruled that evidence obtained during the subsequent investigations be suppressed.

Defendant contends that the evidence obtained in the warrantless post-fire investigation violated the warrant requirement of the Fourth Amendment made applicable to the states by the Fourteenth Amendment.

The Fourth Amendment encompasses searches for administrative purposes as it does searches for evidence of crime. *Marshall v. Barlow's Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978); *See v. City of Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); *State v. Stip,* 246 N.W.2d 897 (S.D.1976). Except in certain carefully defined classes of cases, a search of private property without proper consent is unreasonable absent authorization by a valid search warrant. *Camara v. Municipal Court, supra; State v. Bennett,* 295 N.W.2d 5 (S.D.1980).

The United States Supreme Court has held that although official entries to investigate the cause of a fire are subject to the strictures of the Fourth Amendment, the exigency inherent in the need for prompt response by firemen justifies a warrantless entry to fight a blaze:

A burning building clearly presents an exigency of sufficient proportions to render a warrantless entry "reasonable." Indeed, it would defy reason to suppose that firemen must secure a warrant or consent before entering a burning struc-

ture to put out the blaze. And once in a building for this purpose, firefighters may seize evidence of arson that is in plain view.

*Michigan v. Tyler,* 436 U.S. 499, 509, 98 S.Ct. 1942, 1950, 56 L.Ed.2d 486, 498 (1978).

Rejecting the proposition that the exigency that justifies warrantless entry ends with the extinguishing of the flames, the Court went on to hold:

We think this view of the firefighting function is unrealistically narrow, however. Fire officials are charged not only with extinguishing fires, but with finding their causes. Prompt determination of the fire's origin may be necessary to prevent its recurrence, as through the detection of continuing dangers such as faulty wiring or a defective furnace. Immediate investigation may also be necessary to preserve evidence from intentional or accidental destruction. And, of course, the sooner the officials complete their duties, the less will be their subsequent interference with the privacy and recovery efforts of the victims. For these reasons, officials need no warrant to remain in a building for a reasonable time to investigate the cause of a blaze after it has been extinguished. And if the warrantless entry to put out the fire and determine its cause is constitutional, the warrantless seizure of evidence while inspecting the premises for these purposes also is constitutional.

*Michigan v. Tyler,* 436 U.S. at 510, 98 S.Ct. at 1950, footnote omitted.

In *Tyler* the fire officials left the site of a fire after the fire was extinguished at 4:00 a.m. because their visibility was hindered by darkness, steam and smoke. They returned to the site at 8:00 a.m., conducted a cursory examination, left, and then returned at 9:00 a.m. to gather evidence relating to the origin of the fire. The officials had neither consent nor a warrant for these and subsequent entries into the building. The Court held that these morning entries were no more than a continuation of the first entry and that the resulting seizure of evidence was not invalidated by the lack of a warrant.

Investigation of the causes of a fire is required by statute. SDCL 34–32–1.* The firemen in the Lennox Fire Department apparently have not been trained in this area, and Chief Steever acted promptly in seeking and receiving the assistance of the deputy state fire marshall. Although appellant attempts to distinguish his case from *Tyler* on the grounds that Harrington's entry was not an integral and continuous part of the entry by the firemen inasmuch as the firemen did not participate in his investigation, we do not find this argument persuasive. A similar contention was rejected by the Supreme Court of Alaska in *Schultz v. State,* 593 P.2d 640, 643 (Alaska 1979):

The distinction that Schultz attempts to make—that the *Tyler* case speaks of firefighters remaining on the premises, whereas here Inspector Robinson entered shortly after the fire was under control—has no merit. The overriding concern, both in *Tyler* and in this case, was fire safety, i.e., discovering the cause of the fire.

We conclude that the deputy state fire marshall's 8:00 a.m. entry to investigate the cause of the fire was not so temporally removed from the exigent and warrantless entry of the fire department to fight the 4:50 a.m. fire as to render it something other than a continuation of that exigent

---

\* SDCL 34–32–1 provides:

The department of public safety and the chief of the fire department of every municipality in which a fire department is established, and the mayor or president of every incorporated municipality in which no fire department exists, and the township clerk of every organized civil township without the limits of any organized municipality, shall investigate the cause, origin, and circumstances of every fire occurring in such municipality or township by which property has been destroyed or damaged by fire, and shall especially make investigation as to whether such fire is the result of carelessness or design. Such investigation shall be begun within five days (not including Sunday) of the day of the occurrence of such fire, and the department of public safety shall have the right to supervise and direct such investigation whenever it deems it expedient or necessary.

entry. Granted that the fire was not still raging when Harrington arrived, the ruins were still warm and smoldering. Certainly no one could seriously question the legality of Chief Steever's return to and entry of the premises at 8:00 a.m. We view Harrington's entry in the same light. Accordingly, the trial court did not err in denying the motion to suppress the fruits of Harrington's initial investigation.

Defendant also contends that the State's evidence was insufficient to support the verdicts and sustain his convictions.

In determining the sufficiency of the evidence on appeal, the question presented is whether or not there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt. *State v. Dietz*, 264 N.W.2d 509 (S.D.1978); *State v. Shank*, 88 S.D. 645, 226 N.W.2d 384 (1975). In making such a determination, this Court will accept that evidence, and the most favorable inferences that can be fairly drawn therefrom, which will support the verdict.

*State v. Moeller*, 298 N.W.2d 93, 94 (S.D. 1980). From the recitation of the evidence set forth above, it is clear that this test has been satisfied.

The judgment of conviction is affirmed.

All the Justices concur.