STATE of South Dakota, Plaintiff and Appellee,

v.

Kenneth Dwight FARMER, Defendant and Appellant.

No. 15395–a.

Supreme Court of South Dakota.

Considered on Briefs March 25, 1987.

Decided June 10, 1987.

Frank E. Geaghan, Asst. Atty. Gen., Mark V. Meierhenry, Atty. Gen., Pierre, on the brief, for plaintiff and appellee.

Michael "Mick" Strain, White River, for defendant and appellant.

WUEST, Chief Justice.

Defendant, Kenneth Farmer, appeals his conviction of burglary in the third degree. We affirm.

At approximately 2:30 a.m. on April 7, 1986, Richard Lee (Lee), a resident of Norris, South Dakota, awoke to hear a dog barking near his residence. Lee looked out his window and saw a car drive away from an area near the Standard Service station. He also noticed that lights were on inside the station and someone appeared to be in the building. Lee became suspicious and walked to James Letellier's (Letellier) home, where he used Letellier's phone to call Richard Totten (Totten), the service station owner.

Totten and his wife, Erna, arrived at the service station and found the steel mesh covering the front window partially torn off, the window broken, and the lock on the door broken. Totten entered the building and found defendant hiding in a back room.

Totten called George Bowman (Bowman), the Mellette County Sheriff. After Totten finished talking to Bowman the defendant picked up a tire iron and threatened Totten and his wife. Defendant claimed he had merely accompanied other individuals who were actually responsible for breaking in

and he was not going to accept full responsibility. Defendant appeared to have been drinking but did not seem highly intoxicated. At this point Letellier walked into the station. Defendant laid the tire iron down and explained he and his companions had only wanted some gas and cigarettes.

When Sheriff Bowman arrived he took pictures of the building and several food items that someone had opened and partially consumed. Bowman then read defendant his Miranda rights and had Totten make a citizen's arrest before taking custody of the defendant. Bowman searched defendant and found a roll of postage stamps. Defendant admitted that they were not his stamps. Although Totten could not immediately identify them he discovered that his stamps were missing from the station.

Appellant was convicted of burglary in the third degree. He was sentenced to four years in the South Dakota State Penitentiary.[1]

Appellant argues the trial court should have granted a mistrial because the State "arbitrarily" used a peremptory challenge to strike a prospective juror who, like the appellant, is a member of the Indian race. Appellant argues the State violated his rights to equal protection of the law under the Fourteenth Amendment to the United States Constitution.

■ A defendant has no right to a "petit jury composed in whole or in part of persons of his own race." *Strauder v. West Virginia*, 10 Otto 303, 100 U.S. 303, 25 L.Ed. 664 (1880). A defendant does, however, have the right to be tried by a jury whose members are selected under nondiscriminatory criteria. *Martin v. Texas*, 200 U.S. 316, 321, 26 S.Ct. 338, 339, 50 L.Ed. 497 (1906); *Ex parte Virginia*, 10 Otto 339, 345, 100 U.S. 339, 345, 25 L.Ed. 676 (1880).

■ As in any equal protection case, the burden is on the defendant to prove the existence of purposeful discrimination. *Batson v. Kentucky*, 476 U.S. 79, —, 106 S.Ct. 1712, 1724, 90 L.Ed.2d 69 (1986). A defendant may establish a prima facie case of purposeful discrimination by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose. *Batson*, 106 S.Ct. at 1721; *Washington v. Davis*, 426 U.S. 229, 239–242, 96 S.Ct. 2040, 2047–49, 48 L.Ed.2d 597, 608 (1976). A defendant may make a prima facie showing of purposeful racial discrimination in selection of the venire solely on the facts concerning its selection in his case. A consistent pattern of racial discrimination is not a necessary predicate to a violation of the Equal Protection Clause. *Batson*, 106 S.Ct. at 1722.

■ Once the defendant makes the requisite showing, the burden shifts to the State to explain the racial exclusion. *Batson, supra; Alexander v. Louisiana*, 405 U.S. 625, 632, 92 S.Ct. 1221, 1226, 31 L.Ed.2d 536, 542 (1972). The State must then demonstrate permissible, racially neutral selection criteria and procedures have produced the monochromatic result. *Batson, supra; Alexandria, supra.* The prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause, but he may not merely state that in his judgment the excluded juror would be partial to the defendant because of their shared race. He must articulate a neutral explanation related to the particular case to be tried. The trial court will then have the duty to determine if the defendant has established purposeful discrimination. *Batson*, 106 S.Ct. 1723–24. A finding of intentional discrimination is a finding of fact entitled to appropriate deference by a reviewing court. *Anderson v. City of Bessemer City*, N.C., 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

■ A transcript of the voir dire examination was not included in the settled

---

1. The record shows appellant had several prior convictions for auto theft, escape, burglary, and larceny.

■

record. However, the trial transcript does establish the trial court found the potential juror was related to the defendant by marriage although the judge never stated the actual relationship. Defendant argues in his brief defendant and the prospective juror were related in an "Indian" way, and not by blood.

We cannot review fact questions without a transcript of the proceedings. The trial court found the defendant and the excused juror were related by marriage. Based upon this record, we will not reverse the trial court who heard the voir dire examination.

Defendant next argues the court should have instructed the jury on a lesser included offense. Appellant was convicted under SDCL 22–32–8, which provides:

Any person who enters or remains in an unoccupied structure, with intent to commit any crime therein, is guilty of third degree burglary. Third degree burglary is a class 4 felony.

At the conclusion of the trial, defense counsel proposed various lesser included offense instructions based on SDCL 22–35–5, which provides:

Any person who, knowing that he is not privileged to do so, enters or surreptitiously remains in any building or structure, is guilty of a class one misdemeanor.

The trial court held SDCL 22–35–5 was not a lesser included offense of SDCL 22–32–8 and denied the requested instructions.

"The trial court must instruct on a lesser included offense only if it is legally included in the greater offense and evidence on the elements of the greater, which are not elements of the lesser, is conflicting." *State v. Blakey,* 332 N.W.2d 729, 730 (S.D. 1983); *State v. Oien,* 302 N.W.2d 807, 809 (S.D.1981); *State v. Poss,* 298 N.W.2d 80, 83 (S.D.1980); *State v. Kafka,* 264 N.W.2d 702, 705 (S.D.1978) (Zastrow, L. concurring specially). This rule contains two tests. The first test is a legal test, and the second test is a factual test.

In order to meet the legal test of a necessarily included offense, (1) the elements of the included offense must be fewer in number than the elements of the greater offense, (2) the penalty for the included offense must be less than the greater charged offense, and (3) the two offenses must contain common elements so that the included offense must be such that the greater offense cannot be committed without also committing the lesser. *State v. Kafka,* 264 N.W.2d 702, 705 (S.D.1978) (Zastrow, J., concurring specially).

*Oien,* 302 N.W.2d at 809. The third component of the legal test has been further explained as follows:

[T]he test of a necessarily included offense is simply that where an offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense.... If, in the commission of acts made unlawful by one statute the offender must always violate another, the one offense is necessarily included in the other.... Before a lesser offense can be said to constitute a necessary part of a greater offense, all the legal ingredients of the corpus delicti of the lesser offense must be included in the elements of the greater offense. If an element necessary to establish the corpus delicti of the lesser offense is irrelevant to the proof of the greater offense, the lesser cannot be held to be a necessarily included offense.

*State v. O'Connor,* 86 S.D. 294, 298, 194 N.W.2d 246, 248 (1972).

■■ The third component of the legal test has not been met in this case. Misdemeanor entry under SDCL 22–35–5 is not a necessarily included offense of third degree burglary under SDCL 22–32–8. The "knowing he is not privileged" and "surreptitiously remains" elements in SDCL 22–35–5 are not necessary elements under SDCL 22–32–8. *See Blakey,* 332 N.W.2d at 731. Therefore, the trial court did not err in denying defendant's proposed jury instructions.

The last issue is whether the trial court properly denied defendant's motion for judgment of acquittal. At trial, appellant asserted that because of his intoxication at the time he entered the building, he was not able to form the criminal intent necessary for conviction. Appellant argues the State failed to prove he had the "required specific intent to commit a crime." State argues appellant entered the station with intent to commit theft.

Our standard of review on denial of a motion for judgment of acquittal is whether the State made out a prima facie case from which the jury could reasonably find the defendant guilty. *State v. Andrews,* 393 N.W.2d 76 (S.D.1986); *State v. Bult,* 351 N.W.2d 731 (S.D.1984); *Blakey, supra.* Sufficiency of trial evidence rests on whether the evidence, if believed by the jury, is sufficient to find guilt beyond a reasonable doubt. *Andrews, supra; State v. Faehnrich,* 359 N.W.2d 895 (S.D.1984); *State v. Phinney,* 348 N.W.2d 466 (S.D. 1984); *State v. Jorgensen,* 333 N.W.2d 725 (S.D.1983). In making such determination, this court will accept evidence and the most favorable inferences which can be fairly drawn from that evidence which will support the guilty verdict. *Andrews, supra; Faehnrich, supra; State v. Schafer,* 297 N.W.2d 473 (S.D.1980). Questions of credibility and weight of the evidence are for the jury. *Andrews, supra; Blakey, supra.*

 In order to deny a motion for judgment of acquittal, the evidence must establish beyond a reasonable doubt that entry was made with the specific intent charged. Specific intent to commit theft is a fact question and whether defendant was under a disability preventing him from framing that intent is for the jury to decide. *Blakey, supra.* A statement or confession of the defendant would conclusively prove the existence of an intent to commit larceny. *State v. Peck,* 82 S.D. 561, 150 N.W.2d 725, 728. The element of intent can also, however, be inferred from the circumstances. *Blakey, supra; Peck, supra.*

 Appellant stated his purpose for entering the station when he told Totten he intended to get gas and cigarettes. In addition, the time and method of entry would allow the jury to infer defendant entered the station to commit theft. The opened merchandise and the stamps found in defendant's possession established his intent once he was inside the building. This evidence could also, however, allow the jury to infer that such intent existed when entering the building.

The jury weighed the evidence concerning the intoxication defense asserted by defendant. The Tottens, Bowman, and Letellier all testified that appellant did not appear to be intoxicated. While Bowman and Letellier both believed defendant had been drinking, they did not believe he was intoxicated to any significant degree. We find this evidence sufficient for the jury to find beyond a reasonable doubt the defendant had the specific intent to commit theft. *See* SDCL 22–5–5 (defense of intoxication).

Judgment of conviction is affirmed.

SABERS, J., concurs.

HENDERSON, J., specially concurs.

MORGAN and MILLER, JJ., concur specially/concur in result.

HENDERSON, Justice (specially concurring).

Generally, I agree with the Chief Justice's writing in this case.

*Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), does not seem to reflect "specific guidelines" for the trial court and it appears the Chief Justice of this State has aptly paraphrased *Batson.*

Frankly, this case suffers from a rather poor record concerning the discrimination issue. I am troubled by the fact that the trial judge did apparently make this remark: "I don't believe it's necessary during the voir dire to even establish the fact for the reason why the prosecutor would dismiss a juror." Such a statement seems

to pass over the factors set forth in *Batson*.

Notwithstanding this comment of the trial court, I am convinced that there was not a discriminatory peremptory challenge in this case. Surely—a marriage relationship between the prospective juror and defendant—is a legitimate reason for exercising a peremptory challenge. Thus, the "inference of purposeful discrimination" was met and overcome. *See* reference to "inference of purposeful discrimination" in *Batson*, 476 U.S. at ——, 106 S.Ct. at 1722, 90 L.Ed.2d at 87.

I wish to add that the last paragraph of Justice Miller's writing, in my opinion, has merit in that an in camera proceeding would promote the best interests of justice. Of course, the in camera hearing should be on the record so that an appellate tribunal can sink its teeth into the truth. At the hearing, it can be determined whether or not the intent of the prosecutor is within the limits of permissible racial neutral selection.

MILLER, Justice (concurring specially/concurring in result).

I concur with the majority holding that the trial court did not err in refusing to instruct on the lesser offense and in upholding the trial court's denial of the motion for judgment of acquittal.

However, I merely concur in the result of that portion of the majority opinion dealing with the trial court's refusal to grant a mistrial because of the State's alleged use of a peremptory challenge to strike a perspective juror who is a member of the Indian race. I cannot join the majority on this issue, since I am unclear as to the meaning of the statements that "[a] defendant may make a prima facie showing of purposeful racial discrimination in the selection of the venire solely on the facts concerning its selection in his case" and "[o]nce the defendant makes the requisite showing, the burden shifts to the State to explain the racial exclusion." Citing *Bat-*

*son v. Kentucky*, 476 U.S. ——, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

The majority opinion does not explain how a defendant must make a prima facie showing "in his case", nor, for that matter, does it indicate what constitutes a "requisite showing." Absolutely no guidance is given to either the bench or bar of this state.

It is settled law, and not disputed by the State, that the State's privilege to strike individual jurors through peremptory challenges is subject to the broad commands of the equal protection clause. The burden rests upon the defendant who alleges discriminatory selection to prove the existence of purposeful discrimination. *Batson*, *supra*; *Whitus v. Georgia*, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967); *Tarrance v. Florida*, 188 U.S. 519, 23 S.Ct. 402, 47 L.Ed. 572 (1903). His burden is met by a prima facie showing, on the record, of purposeful discrimination. The burden then shifts to the State to demonstrate that "permissible racial neutral selection criteria and procedures have produced the monochromatic result." *Alexander v. Louisiana*, 405 U.S. 625, 632, 92 S.Ct. 1221, 1226, 31 L.Ed.2d 536, 542 (1972).

From a practical standpoint, the defendant must raise the issue immediately upon the State's exercise of the claimed discriminatory peremptory challenge. It is the trial court's responsibility to conduct an in-camera hearing on the issue. The mere fact that the person disqualified is of the same race does not, in and of itself, establish a prima facie case. *See Batson*, *supra*. Upon a prima facie showing, the State must establish to the satisfaction of the trial court the absence of purposeful discrimination. *Id.* The trial court should consider all relevant circumstances, including a pattern of strikes against jurors of certain categories, the prosecutor's questions or statements during voir dire, together with any inferences which may be appropriately drawn therefrom. *Id.*

In this case, even though there was no transcript of the voir dire examination, an

 

adequate, albeit minimal, record was made to demonstrate that the trial court gave meaningful consideration to appellant's objections. In making its rulings, the trial court determined that there was a marriage relationship between the prospective juror and the defendant, which, although not sufficient to warrant excuse for cause, provided sufficient meritorious reasons for exercising a peremptory challenge. This holding was certainly proper.

I am authorized to state that Justice MORGAN joins in this concurring specially/concurring in result.