**Michael HONOMICHL, Petitioner and Appellant,**

v.

**Walter LEAPLEY, Warden of the South Dakota State Penitentiary, Appellee.**

No. 17762.

Supreme Court of South Dakota.

Argued Sept. 2, 1992.

Decided April 7, 1993.

John A. Schlimgen of Stuart and Gerry, Sioux Falls, for petitioner and appellant.

Mark Barnett, Atty. Gen., Ann C. Meyer, Asst. Atty. Gen., Pierre, for appellee.

MILLER, Chief Justice.

Michael Honomichl was convicted of first-degree manslaughter arising out of the murder of Randy Caldwell by Honomichl and James Weddell. This court affirmed Honomichl's conviction on direct appeal.[1] Honomichl then sought habeas corpus relief. After an evidentiary hearing, Circuit Judge Tapken filed extensive findings of fact and conclusions of law and denied Honomichl's petition. Honomichl appeals. We affirm.

Our "scope of review in habeas corpus proceedings is limited, since the remedy is in the nature of a collateral attack upon a judgment." *Goodroad v. Solem*, 406 N.W.2d 141, 142 (S.D.1987). We use habeas corpus to review "in certain cases, whether an incarcerated defendant has been deprived of basic constitutional rights." *Id.* at 144.

## ISSUE I

WHETHER STATE IMPROPERLY EXERCISED ITS PEREMPTORY CHALLENGE TO REMOVE ELLA HUAPAPI, AN AMERICAN INDIAN, FROM HONOMICHL'S JURY PANEL THEREBY DENYING HIM THE EQUAL PROTECTION OF LAW.

On March 5, 1986, Honomichl and his co-defendants, Weddell and Enos Weston, were indicted for second-degree murder and first-degree manslaughter. The prosecutor was Gary Conklin, the Charles Mix County State's Attorney. Honomichl and his two co-defendants were represented by separate counsel. James A. Haar was Honomichl's court-appointed counsel.[2] Lee Tappe was the attorney for co-defendant Weddell. Kenneth Cotton, attorney for co-

---

1. *State v. Honomichl,* 410 N.W.2d 544 (S.D. 1987). In that opinion, Honomichl's sentence was incorrectly noted as eighty years in the South Dakota State Penitentiary. Honomichl was sentenced to sixty years. Honomichl's co-

defendant, Weddell, was sentenced to eighty years.

2. Honomichl has different counsel for this habeas action.

defendant Weston, was lead defense counsel during voir dire, although all defense attorneys participated.[3]

On the first day of voir dire, after Ella Huapapi, an American Indian, was examined, State exercised one of its peremptory challenges on Huapapi. Joseph McBride, an American Indian, was examined and struck for cause, without objection, when he indicated that he knew all of the defendants and would find it difficult to serve on the jury and to be fair and impartial.

On the second day of trial, the day on which *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), was decided, Bertha Hare, an American Indian, was examined and struck for cause, without objection, when she indicated that she had a hearing problem and had known the defendants since they were small boys. After the prosecutor examined Ben Cadotte, an American Indian, he attempted to remove Cadotte for cause as Cadotte had a "disorderly" pending in Charles Mix County at the time. When the prosecutor was unsuccessful, he exercised a peremptory challenge to remove Cadotte. Honomichl concedes that this peremptory challenge was not done with a discriminatory intent. The prosecutor also used peremptory challenges on non-Indian jurors. It is the removal of Huapapi from the jury panel by State through the use of its peremptory challenge which gives rise to Honomichl's *Batson* challenge.

■■■ It has long been established that a defendant is denied equal protection of law when members of his race are purposely excluded from the jury. *Strauder v. West Virginia,* 100 U.S. 303, 25 L.Ed. 664 (1880). Further, the Equal Protection Clause is violated if even one juror is struck for a race based reason. *United States v. Battle,* 836 F.2d 1084, 1086 (8th Cir.1987).

On the first day of Honomichl's voir dire, April 29, 1986, in order for Honomichl to establish that he had been denied equal protection of law due to the exclusion of

members of his race from the jury, he had to prove systematic exclusion of members of his race from the venire panel. *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). However, on Honomichl's second day of voir dire, April 30, 1986, the method of proof changed when the United States Supreme Court said that a defendant could now "establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial." *Batson,* 476 U.S. at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87; *State v. Farmer,* 407 N.W.2d 821, 823 (S.D.1987).

■■■ The rule in *"Batson* applies to all cases not yet final when it was decided." *Randolph v. Delo,* 952 F.2d 243, 245 n. 2 (8th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1967, 118 L.Ed.2d 568 (1992) (citing *Griffith v. Kentucky,* 479 U.S. 314, 316, 107 S.Ct. 708, 709, 93 L.Ed.2d 649, 654 (1987)). A case is final when "a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari [expired]." *Griffith,* 479 U.S. at 321 n. 6, 107 S.Ct. at 712 n. 6, 93 L.Ed.2d at 657 n. 6. *"Batson* should not be applied retroactively on collateral review of convictions that became final before [*Batson*] was announced." *Allen v. Hardy,* 478 U.S. 255, 258, 106 S.Ct. 2878, 2879–80, 92 L.Ed.2d 199, 204 (1986). Honomichl's trial was in progress when *Batson* was decided, so a *Batson* inquiry is required in this collateral review of Honomichl's conviction.

To establish a prima facie case of purposeful discrimination,

the defendant first must show that he is a member of a cognizable racial group and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory chal-

---

**3.** The trial court granted Weston's motion for judgment of acquittal before the case was submitted to the jury.

lenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.

*Batson,* 476 U.S. at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87–88 (citations omitted). The prima facie requirements of *Batson* were recently relaxed when the Supreme Court held a criminal defendant may object to race-based exclusions of jurors effected through peremptory challenges whether or not the defendant and the excluded juror share the same race. *Powers v. Ohio,* 499 U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). The race of the defendant and the race of jurors peremptorily challenged are now circumstances for the trial court to consider in determining whether defendant raised an inference that State used its peremptory challenges for race-based reasons. *Id.* "The ultimate burden of persuading the trier of fact that the [prosecutor] intentionally discriminated against [Honomichl] remains at all times with [Honomichl]." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 256, 101 S.Ct. 1089, 1093, 1095, 67 L.Ed.2d 207, 215, 217 (1981);[4] *Farmer,* 407 N.W.2d at 823.

Honomichl and his co-defendants are American Indians. Their victim was caucasian. Two potential American Indian jurors were challenged for cause and the prosecutor peremptorily challenged two others. The habeas court found it relevant that the final jury panel of twelve jurors and one alternate contained no American Indians, although the reasons for removing most of them from the jury panel were apparent. The habeas court found that Honomichl had raised an inference of discrimination and had established his prima facie case. We assume, without deciding, that the habeas court was correct.

Honomichl, by establishing his prima facie case, established a *rebuttable* presumption of purposeful discrimination. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094, 67 L.Ed.2d at 216. State can rebut this presumption by articulating a "clear and reasonably specific" race neutral explanation for using its peremptory challenge. *Batson,* 476 U.S. at 97, 98 n. 20, 106 S.Ct. at 1723, 1724 n. 20, 90 L.Ed.2d at 88 n. 20 (citing *Burdine,* 450 U.S. at 258, 101 S.Ct. at 1096, 67 L.Ed.2d at 218); *Farmer,* 407 N.W.2d at 823. This explanation *does not* have to "rise to the level justifying exercise of a challenge for cause." *Batson,* 476 U.S. at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88; *Farmer,* 407 N.W.2d at 823.

It is settled law in this country that "[u]nless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez v. New York,* 500 U.S. ——, ——, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395, 406 (1991). "While it is true that striking a [minority] venireperson for racial reasons is always violative of the Constitution, it is not true that all peremptory strikes of [minority] venirepersons are for racial reasons." *United States v. Lewis,* 892 F.2d 735, 736 (8th Cir.1989).

Honomichl asserts the habeas court was clearly erroneous when it determined State rebutted the presumption of purposeful discrimination. "A finding of intentional discrimination is a finding of fact entitled to appropriate deference by a reviewing court." *Batson,* 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21, 90 L.Ed.2d at 89 n. 21; *Farmer,* 407 N.W.2d at 823. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518, 528 (1985). "In evaluating the race-neutrality of an attor-

---

**4.** Although *Burdine* discussed discrimination of minorities or gender-based discrimination in violation of Title VII, this case must be read in conjunction with *Batson,* particularly in view of the fact that *Batson* cites *Burdine. See State v.*

*Antwine,* 743 S.W.2d 51, 63 (Mo.1987), *cert. denied,* 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988); *Jones v. Jones,* 938 F.2d 838, 844 (8th Cir.1991); *United States v. Jimmie Wilson,* 884 F.2d 1121, 1124 (8th Cir.1989).

ney's explanation, a court must determine whether, assuming the proffered reasons for the peremptory challenges are true, the challenges violate the Equal Protection Clause as a matter of law." *Hernandez,* 500 U.S. at ——, 111 S.Ct. at 1866, 114 L.Ed.2d at 405–06.

Honomichl cites this court to more than a dozen cases discussing examples of reasonably clear race neutral reasons for State's exercise of peremptory challenges on minority venirepersons. However, in every one of those cases the defendants had first raised the issue *at trial,* regardless of whether the trial was conducted under the *Swain* or *Batson* guidelines.[5] Honomichl raised no objection at his trial. Only one of Honomichl's authorities, discussed *infra,* involves collateral review of a conviction. All of the others involve *Batson* issues addressed on direct appeal. In every direct appeal case the prosecutors were asked to, and did, offer reasons at trial for the exercise of the questioned peremptory challenges. Honomichl's prosecutor, Conklin, was not asked to offer, and did not offer at trial, reasons for the exercise of his peremptory challenges.

The only habeas case cited by Honomichl is *Harrison v. Ryan,* 909 F.2d 84 (3rd Cir.), *cert. denied sub nom. Castille v. Harrison,* 498 U.S. 1003, 111 S.Ct. 568, 112 L.Ed.2d 574 (1990). *Harrison* noted that in light of the facts that "defense counsel timely objected to the use of peremptory challenges, the number of peremptory challenges exercised against Blacks was so great, [and] the race neutral reasons given for striking other black jury venirepersons were so weak, ..." *id.* at 87–88, the prosecutor's inability to recall a race neutral reason for striking the sixth juror did not sufficiently "satisfy the *Batson* require-

ment that the 'prosecutor ... must articulate a neutral explanation related to the particular case to be tried.'" *Id.* at 87 (citing *Batson,* 476 U.S. at 98, 106 S.Ct. at 1724, 90 L.Ed.2d at 88). Such a situation does not describe the case before this court.

*Batson* was decided before Harrison's or Honomichl's case was final. Harrison's prosecutor used six of his eight peremptories; all were used on Blacks. Conklin, Honomichl's prosecutor, exercised on Indians as well as on non-Indians. Harrison objected *AT TRIAL* to the prosecutor's exercise of peremptory challenges. Honomichl did not. Harrison's *Batson* evidentiary hearing was held several years after trial as was Honomichl's. Harrison's prosecutor was asked at the hearing, as was Honomichl's, to explain the use of his peremptory challenges. Harrison's prosecutor gave reasons "which were not strong" for five of six of his exercises. The strength of Conklin's reason for using a peremptory on the Indian Ben Cadotte is beyond question. Harrison's prosecutor could not articulate a reason why he would have exercised in one particular instance though he thought it could have been due to the prospective juror's age.

Conklin did articulate a reason for exercising on Huapapi. During the habeas proceeding, Conklin testified that prior to trial he researched the background of each prospective juror. He met with the sheriff and his deputies. As a result, he entered research notes and question marks alongside several names on the jury list. Conklin testified that he put a question mark by Ella Huapapi's name because he was not sure she would be a fair and impartial juror; that he had a "gut feeling" about her.[6]

---

5. In one of the cited cases, it is unclear whether an objection was made at trial, though in light of the fact that the prosecutor there explained his use of the challenge, it is reasonable to assume that objections were raised which brought forth the explanation.

6. Honomichl cites this court to *United States v. Horsley,* 864 F.2d 1543 (11th Cir.1989), which discusses the prosecutor's "gut feeling." This peculiar decision arose from a direct appeal.

There the defendant raised an objection at trial to the prosecution's exercise of its peremptory challenges. The prosecutor then expressed that he had a "gut feeling" about a particular individual. The trial court accepted this explanation because *Batson* had not yet been decided. The next day *Batson* was decided and the trial court asked, before impaneling the jury, if the prosecutor had anything to add. The prosecutor declined to offer additional reasons. The trial court then decided that no prima facie case of

During the habeas proceeding, it was revealed that John Huapapi, a relative of Ella Huapapi, had recently been prosecuted by Conklin in his capacity as the Charles Mix County State's Attorney. Conklin testified that at the time he exercised his peremptory on Ella Huapapi, he did not think he realized this fact; rather, it was the question mark beside her name which caused him to strike her. The habeas judge stated in his memorandum opinion that

> even though Mr. Conklin may not have realized the significance of the Huapapi name at the time of jury selection, there was apparently a spark in his memory that was struck upon encountering the Huapapi name and this was sufficient to cause him to question the impartiality of Ms. Huapapi.

. . . .

The fact that the name 'Huapapi' raised enough of a concern to cause Mr. Conklin to place a question mark ("?") beside the name after he did some investigation has no relation at all to the fact that Ms. Huapapi is a Native American. The name that caused concern to Mr. Conklin could just as easily have belonged to a caucasian or any other ethnic group as it did to a Native American. The mere coincidence that the name belonged to the only remaining Native American on the jury panel is insufficient to conclude that the exclusion was based on a discriminatory purpose.

"If the trial court believes the prosecutor's explanation, a reviewing court ordinarily should give this credibility finding 'great deference.'" *United States v. Roan Eagle*, 867 F.2d 436, 441 (8th Cir.), *cert. denied*, 490 U.S. 1028, 109 S.Ct. 1764, 104 L.Ed.2d 199 (1989); *Hernandez*, 500 U.S. at

——, 111 S.Ct. at 1868, 114 L.Ed.2d at 408–09.

"[T]he Equal Protection Clause forbids the prosecutor to challenge potential jurors *SOLELY* on account of their race...." *Batson*, 476 U.S. at 89, 106 S.Ct. at 1719, 90 L.Ed.2d at 83 (emphasis added). We find Conklin's exercise of the peremptory on Huapapi is not solely on account of her race. We reiterate that Conklin's burden here is "only [to] produce admissible evidence which would allow the trier of fact rationally to conclude that the [challenge] had not been motivated by discriminating animus.... [To] require [Conklin] to introduce evidence which, in the absence of any evidence of pretext, would *persuade* the trier of fact that the ... action was lawful ... exceeds what properly can be demanded to satisfy a burden of production." *Burdine*, 450 U.S. at 257, 101 S.Ct. at 1096, 67 L.Ed.2d at 218 (emphasis in original). The habeas court's determination that the prosecutor proffered a neutral explanation does not leave us "with the definite and firm conviction that a mistake has been committed." *Bessemer City*, 470 U.S. at 573, 105 S.Ct. at 1511, 84 L.Ed.2d at 528.

Interestingly, we note that Cotton, lead counsel for the defense during voir dire, testified at the habeas proceeding that during the course of his voir dire examination a lot of time was spent talking about racial prejudice, since the victim was white and the defendants were American Indians. Cotton felt he was going to get a fair trial from the jury when he passed the panel for cause. We note that Cotton himself may have exercised a peremptory on Huapapi as he testified he had doubts as to whether he would leave Huapapi on the panel because she was related to several of the witnesses who were involved in the feud which precipitated the victim's death. Of course,

discrimination had been made by the defendant. The appeals court remanded for a determination of whether the defendant had even made a prima facie *Batson* case. On remand, however, the court determined the prosecutor could offer nothing more than his unsupported "gut feeling" to rebut the prima facie case, in the event one was established, even though the court determined that a "gut feeling" standing alone was not sufficient to rebut a prima facie *Batson* case.

That court's decision to allow the defendant on remand to offer further evidence in an effort to establish his prima facie case, while forbidding the prosecutor an equal opportunity to offer further explanation to rebut the prima facie case, if established, makes little sense and does even less to further the interests of justice. In any event, in the instant case we are not presented with a "gut feeling" standing alone.

Cotton did not have to resolve his doubts against Huapapi, as State exercised first.

■ Once State offers a neutral explanation, "the factual inquiry proceeds to a new level of specificity." *Burdine*, 450 U.S. at 255, 101 S.Ct. at 1095, 67 L.Ed.2d at 216. Honomichl must show the proffered reasons are unworthy of credence by the court in that they are pretextual. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095, 67 L.Ed.2d at 217; *United States v. Jimmie Wilson*, 884 F.2d 1121, 1124 (8th Cir.1989); *United States v. George Wilson*, 816 F.2d 421, 423 (8th Cir.1987), *cert. denied*, 493 U.S. 827, 110 S.Ct. 92, 107 L.Ed.2d 57 (1989).

■ The court reporter's notes from the first and much of the second day of voir dire were inadvertently lost prior to the habeas hearing. As a result, only a partial transcript could be made in preparation for the habeas evidentiary hearing. Honomichl asserts that without a complete transcript he is unable to counter the proffered neutral explanation by State, thus denying him his constitutional rights. Honomichl concedes, although he tries to explain the concession away, that during the habeas proceeding full cross-examination of the trial lawyers reconstructed the events of jury selection and the examination of the four potential American Indian jurors. The inadvertent loss of the voir dire notes has not resulted in any harm to Honomichl's rights. We note that absent the complete transcript, Honomichl was able to establish a prima facie *Batson* case to the satisfaction of the habeas court. " 'A mere technically incomplete record, involving no substantial or significant omissions, will not be sufficient' to order a new trial." *State v. Dupris*, 373 N.W.2d 446, 449 (S.D.1985). The habeas court's determination that Honomichl has no *Batson* claim is affirmed.

Honomichl also raises the following issues: 1) Whether he was denied his right to a fair trial when the trial court failed to give an accomplice instruction to the jury and when the trial court considered certain prior convictions during sentencing; and 2) Whether he was denied effective assistance of counsel when a *Batson* issue was not raised at trial or on direct appeal and by the defense strategy used at trial and by his counsel's trial decisions regarding motions and objections.

We have carefully considered Honomichl's arguments and assignments of error and find them to be without merit. *State v. Esslinger*, 357 N.W.2d 525, 533 (S.D. 1984).

Affirmed.

WUEST and AMUNDSON, JJ., concur.

HENDERSON and SABERS, JJ., dissent.

HENDERSON, Justice (dissenting).

Based upon the decision of *United States v. Battle*, 836 F.2d 1084, 1086 (8th Cir. 1987), I dissent. Further, I additionally dissent based upon *Batson v. Kentucky*, 476 U.S. 79, 96–97, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69 (1986).

A Caucasian was the victim. The jury was all Caucasian. Honomichl was an American Indian. Not one Indian was on the jury. An April, 1990, Federal census reflects there were 1,992 American Indians in Charles Mix County, venue of the trial. This author takes judicial notice thereof.[*] *See*, USD Business Research Bureau's State Data Center's Transcription of Summary Tape File 2. With one thousand nine hundred and ninety-two Indians in this county, it is apparent that the legal system could have found at least one Indian to sit on the jury. Having heard the evidence, the habeas court found that Honomichl established a "prima facie" case of discrimination. This shifted the proof to the State to rebut this presumption. State says it did, Honomichl says it did not.

State relies on:

1) a question-mark by the juror's name; (no probative value);

2) a "gut feeling" that prosecutor Gary Conklin had about the juror; (a "feel-

---

[*] Judicial notice may be taken at any stage of the proceeding. SDCL 19–10–6. Obviously, this would include appeal and particularly where the focus is alleged racial discrimination. *See also*, SDCL 19–10–2.

ing" of what?) (a feeling of antipathy?);

3) Conklin's discussion with Sheriff's Office about the jury panel (but there is no record on *what the discussion was* ); and

4) that the Huapapi name struck a chord in Conklin's mind. (what *kind* of chord?).

State did not, by the above four arguments, raise its level of proof to a "clear and reasonably specific" race-neutral explanation for its peremptory challenge, as required by *Batson*. These four reasons are so weak, to establish a neutral explanation, that the prima facie case is not rebutted. In *Jones v. Jones*, 938 F.2d 838, 840 (8th Cir.1991), it was held that a prosecutor must give a "clear and reasonably specific" explanation of his "legitimate reasons" for "exercising the challenges." Faced with overcoming a presumption, the State failed to produce evidence which is *clear* and *reasonably specific.*

Coupled with the above is the haunting question and complication that a majority of the voir dire reporter's notes were lost. Honomichl was unable to develop his case to its full potential. He did not have a transcript to probe into the voir dire phase of the trial.

In *United States v. Hughes*, 880 F.2d 101, 102 (8th Cir.1989), the federal appellate court held that the striking of a single juror for racial reasons violates the Equal Protection Clause, and this applies if there were valid reasons for striking the other jurors (here, McBride and Hare and Cadotte); and this rule is applicable even when there are members of the involved minority race seated on the jury. In the case before us, the State of South Dakota struck the last American Indian from the jury panel. Trial court held, by Finding Number 10(A), that a prima facie case of discrimination was established and it cannot be denied that State did not object to this finding nor did it file a Notice of Review on this finding.

Let us examine Conklin's testimony at the hearing. Prosecutor Conklin was asked by the State why he saw fit to exercise a peremptory challenge on Ella Huapapi. Conklin answered:

I had a list of jurors I was given by the Clerk of Courts before the trial began and, as was my practice with all jury trials, I went over the list with the sheriff's office. Some of these people I had dealt with during the course of my duty as state's attorney and I made notes on that list as to various persons on the list and I recall as to her I had a question mark beside her name. I guess because of the nature of this type of case I decided I didn't want to have a juror on the panel with a question mark that I wasn't sure of. So I struck her name off.

Conklin further revealed that he recalled prosecuting a John Haupapi for a DWI. He indicated that he believes that John was somehow related to Ella. However, *he indicated that he did not know that fact at the time of the trial, and "didn't make the connection right away."* (Emphasis supplied mine).

On cross-examination by Honomichl, Mr. Conklin's testimony was clarified. Conklin was asked if the prosecution of John Haupapi by Conklin entered into his reason for using the peremptory challenge on Mrs. Haupapi. He stated: "No. But the question mark did." Conklin was then asked directly what the question mark reflected. Conklin then reiterated his position that he was not sure what kind of juror she would make, so he put a question mark by her name. Honomichl pursued the issue, and *asked him again if there was any definite reason for taking Mrs. Haupapi off the stand. Mr. Conklin's reply was: "No. Other than a gut feeling I didn't think I wanted her on the jury panel."*

This "gut feeling" is not a neutral explanation; nor is a question mark. It is, in reality, no explanation at all. Without an explanation which is meaningful, how does this Court decide if there was racial or non-racial motivation in questioning the impartiality of Ella Haupapi?

There is no evidence in this record to support a "sub-conscious spark." Instead of dealing with facts (upon which to predicate a finding of fact), trial court was con-

cerning itself with the sub-conscious of the prosecutor's mind.

If assertions and conclusions that "gut feelings" and a "spark" in the sub-conscious "memory" can rebut Honomichl's prima facie case, "the equal protection clause would be a vain and illusory requirement." *Batson* at 98, 106 S.Ct. at 1724.

*Batson* was the controlling law when this case was tried in 1986. In fact, *Batson* was handed down on the second day of the trial. One of the distinguishing aspects of this case is that the court reporter's notes on voir dire examination were lost. Overt evidence of discrimination, as suggested by the new law established by the majority opinion in *Hernandez v. New York*, 500 U.S. ——, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991), is, thus, impossible. Honomichl is trapped, and unfairly so, because he has no way of comparing that which was testified to by Conklin at the habeas corpus hearing relevant to the testimony at the voir dire. Another sad commentary on this case is that trial counsel testified at the habeas corpus hearing that had he been aware of the *Batson* case, he would have made a motion for the State to make a neutral explanation after the two Native Americans were excluded. A trial is supposed to be fair. As we examine the cumulative affect of the discriminatory impact, it overwhelms one with the idea that Honomichl was treated with inefficiency and discrimination. *Hernandez* followed the *Batson* test which states that after the defendant makes a prima facie showing, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. *Hernandez*, 500 U.S. at ——, 111 S.Ct. at 1866. In *Hernandez*, the prosecutor explained that his striking of the Hispanic jurors was based upon those jurors being bilingual, and he believed that they would ignore the interpreter. Thus, the prosecutor articulated a race-neutral explanation. Instanter, the prosecutor offered no explanation except "gut feeling." The prosecutor has failed to meet the burden as established by the highest court in this land.

SABERS, Justice (dissenting).

1. Honomichl has established a prima facie case, which raises a rebuttable presumption of purposeful discrimination. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094, 67 L.Ed.2d at 216. When "the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question." *Hernandez*, 500 U.S. at ——, 111 S.Ct. at 1866, 114 L.Ed.2d at 405 (citing *Batson*, 476 U.S. at 97–98, 106 S.Ct. at 1723–24, 90 L.Ed.2d at 88–89.)

2. The state must rebut this presumption under *Batson*, by articulating a " 'clear and reasonably specific' " race neutral explanation of its " 'legitimate reasons' for exercising the challenges." These reasons must be "related to the particular case to be tried." *Batson*, 476 U.S. at 98, and n. 20, 106 S.Ct. at 1724, and n. 20, 90 L.Ed.2d at 88–89, and n. 20 (citation omitted). "[T]he prosecutor's justification must identify 'legitimate reasons' that are 'related to the particular case to be tried' and sufficiently persuasive to 'rebut a defendant's prima facie case.' " *Hernandez*, 500 U.S. at ——, 111 S.Ct. at 1875, 114 L.Ed.2d at 417 (Stevens, J., dissenting) (citing *Batson*, 476 U.S. at 98, and n. 20, 106 S.Ct. at 1724, and n. 20, 90 L.Ed.2d at 88, and n. 20.)

Under these facts and circumstances, and the *Batson* test, the state loses. It failed to articulate either a *clear* or *reasonably specific* race neutral explanation. The prosecutor may not "rebut the defendant's case merely by denying that he had a discriminatory motive or affirming his good faith in making individual selections." *Batson*, 476 U.S. at 98, 106 S.Ct. at 1723–24, 90 L.Ed.2d at 88 (citation omitted).

3. Under the more recent United States Supreme Court case of *Hernandez v. New York*, however, "the reason offered will be deemed race neutral" "[u]nless a discriminatory intent is inherent in the prosecutor's explanation." 500 U.S. at ——, 111 S.Ct. at 1866, 114 L.Ed.2d at 406. *But see Hernandez*, 500 U.S. at ——, 111 S.Ct. at 1876, 114 L.Ed.2d at 417 (Stevens, J., dissenting). ("[A] justification that is frivolous or illegitimate should not suffice to rebut the

prima facie case." *Id.* (citations omitted)). This appears to me to change the test and the burden. As Justice Stevens urged in his *Hernandez* dissent,

> [t]he Court ... errs in focusing the entire inquiry on the subjective state of mind of the prosecutor.

> . . . .

> The Court overlooks ... the fact that the "discriminatory purpose" which characterizes violations of the Equal Protection Clause can sometimes be established by objective evidence that is consistent with a decisionmaker's honest belief that his motive was entirely benign.

> . . . .

> By requiring that the prosecutor's explanation itself provide additional, direct evidence of discriminatory motive, the Court has imposed on the defendant the added requirement that he generate evidence of the prosecutor's actual subjective intent to discriminate. Neither *Batson* nor our other equal protection holdings demand such a heightened quantum of proof.

*Hernandez*, 500 U.S. at ——, 111 S.Ct. at 1876, 114 L.Ed.2d at 417–18 (Stevens, J., dissenting).

It also seems to change the result. "If any explanation, no matter how insubstantial and no matter how great its disparate impact, could rebut a prima facie inference of discrimination provided only that the explanation itself was not facially discriminatory, the Equal Protection Clause would be but a vain and illusory requirement." *Id.* (citation omitted).

4. The Supreme Court held in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) that, with two exceptions, "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Teague*, 489 U.S. at 310, 109 S.Ct. at 1075, 103 L.Ed.2d at 356. *See also Walton v. Caspari*, 916 F.2d 1352 (8th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1337, 113 L.Ed.2d 268 (1991). "[W]ith two exceptions, 'new rules' of constitutional criminal procedure should

be applied retroactively to cases on direct review, but generally should not be applied retroactively to cases on collateral review." *Id.* at 1358 (citing *Teague*, 489 U.S. at 304–11, 109 S.Ct. at 1072–75). The same conclusion would be reached through the analysis required by *Cowell v. Leapley*, 458 N.W.2d 514 (S.D.1990). *See McCafferty v. Solem*, 449 N.W.2d 590 (S.D.1989) where a 3–2 majority held that judicially created evidentiary rule which would not allow expert witnesses to give opinion regarding credibility of child sexual abuse victim did not apply retrospectively.

5. Honomichl's conviction was affirmed by this court on July 29, 1987. *State v. Honomichl*, 410 N.W.2d 544 (S.D.1987). Under the Supreme Court rules in effect at that time, Honomichl had sixty days to file a petition for certiorari. *See* Sup.Ct.R. 20.1 (1980); *Walton*, 916 F.2d at 1357–58. Honomichl did not file a petition, and his conviction became final on September 27, 1987 when the time for filing a petition for certiorari from the judgement affirming his conviction expired. *Graham v. Collins*, —— U.S. ——, ——, 113 S.Ct. 892, 898, 122 L.Ed.2d 260, 270 (1993) (citation omitted). *See Walton*, 916 F.2d at 1357–58. *Hernandez* was decided May 28, 1991. Therefore, Honomichl's conviction became final before *Hernandez* was decided.

6. "[A] case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government," or "if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague*, 489 U.S. at 301, 109 S.Ct. at 1070, 103 L.Ed.2d at 349 (citations omitted) (emphasis in original).

> While there can be no dispute that a decision announces a new rule if it expressly overrules a prior decision, "it is more difficult ... to determine whether we announce a new rule when a decision extends the reasoning of our prior cases." Because the leading purpose of federal habeas review is to "ensur[e] that state courts conduct criminal proceedings in accordance with the Constitution as interpreted at the time of th[ose]

proceedings," we have held that "[t]he 'new rule' principle ... validates reasonable, good-faith interpretations of existing precedents made by state courts." This principle adheres even if those good-faith interpretations "are shown to be contrary to later decisions." Thus, unless reasonable jurists hearing petitioner's claim at the time his conviction became final "would have felt compelled by existing precedent" to rule in his favor, we are barred from doing so now.

*Graham*, —— U.S. at —— ——, 113 S.Ct. at 897–98, 122 L.Ed.2d at 269–70 (citations omitted).

7. I do not agree that the *Hernandez* test is actually "settled law in this country" as claimed by the majority. *See Hernandez*, 500 U.S. at ——, 111 S.Ct. at 1875, 114 L.Ed.2d at 416 (Stevens, J., dissenting). ("[T]he Court ... errs when it concludes that a defendant's Batson challenge fails whenever the prosecutor advances a non-pretextual justification that is not facially discriminatory." *Id.*) Rather, it seems to have announced a new rule and overruled *Batson* without even saying so by shifting the burden to the defendant to prove that a discriminatory intent is inherent in the prosecutor's explanation.

Under the facts and circumstances of this case, no discriminatory intent is inherent in this prosecutor's explanation. If *Hernandez* is applied retroactively, the reason offered, even if a poor reason, "will be deemed race neutral." This was not the result dictated by *Batson*, which was the existing precedent at the time Honomichl's conviction became final. Therefore, *Hernandez* is a new rule, which should not be applied to this case on collateral review.

Having found that *Hernandez* is inapplicable, *Batson* applies and the state has failed to rebut the presumption of purposeful discrimination which Honomichl established. Therefore, I dissent. I would reverse and remand for a new trial.